VIVIAN L. RADER, ET AL.,[1] PETITIONERS *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 11409–11, 11476–11, 27722–11.

Filed October 29, 2014.

Ps failed to file returns for 2003–06 and 2008 (years in issue). The IRS examining agent, using the bank deposits method and information returns issued in connection with payments to P–H or to both Ps, reconstructed Ps' income for the years in issue and determined tax deficiencies and additions to tax under I.R.C. secs. 6651(a)(1) and (2) and 6654, which he incorporated on substitutes for returns (SFRs) for each P for 2003–06 and an SFR for P–H for 2008. The SFRs constituted the basis for the notices of deficiency issued to Ps. R filed amendments to answer in docket Nos. 11409–11 and 11476–11 in which he changed the erroneous selection of "single" filing status on the 2003–06 SFRs for each P to "married filing separate", thereby increasing the tax deficiencies and additions to tax for each of those years, as set forth on attachments to the amendments to answer. During the trial, the parties stipulated that any and all deficiencies and additions to tax arising therefrom would be imposed on P–H alone. Among the items of income that Ps received in 2006 were proceeds from two sales of Colorado real property that were subjected to 10% withholding by the escrow agent pursuant to I.R.C. sec. 1445(a), which applies to dispositions of U.S. real property interests by foreign persons and gives rise to a credit under I.R.C. sec. 33. Ps failed to furnish the payor with a taxpayer identification number or a certification that Ps were not foreign persons, which would have exempted them from I.R.C. sec. 1445(a) withholding pursuant to I.R.C. sec. 1445(b)(2). Ps attack the sufficiency of the SFRs, argue that the 2006 tax deficiency must be offset by the tax withheld under I.R.C. sec. 1445(a), raise a frivolous Fifth Amendment claim against having to testify at trial concerning their nonfiling of returns for the years in issue, and contest R's imposition of additions to tax under I.R.C. secs. 6651(a)(1) and (2) and 6654.

1. *Held*: P–H is liable for the income tax deficiencies that R determined for the years in issue and set forth on the SFRs, as revised by the amendments to answer.

2. *Held*, *further*, P–W is not entitled to a refund of any portion of the tax withheld from the proceeds of the 2006 real property sales because the deemed filing date of P–W's refund claim (the Feb. 11, 2011, notice of deficiency mailing date)

[1] Cases of the following petitioner are consolidated herewith: Steven R. Rader, docket Nos. 11476–11 and 27722–11.

376

was more than two years after the overpayment (deemed to have occurred on the Apr. 15, 2007, due date of P–W's 2006 return). *See* I.R.C. secs. 6511(b)(2)(B), 6512(b)(3)(B); *Healer v. Commissioner*, 115 T.C. 316 (2000).

3. *Held*, *further*, the amounts withheld from the proceeds of Ps' 2006 sales of real property gave rise to an I.R.C. sec. 33 credit, which, pursuant to I.R.C. sec. 6211(b)(1), may not be taken into account in determining P–H's 2006 tax deficiency.

4. *Held*, *further*, Ps' Fifth Amendment claim is rejected.

5. *Held*, *further*, P–H is liable for the additions to tax under I.R.C. secs. 6651(a)(1) and (2) and 6654 except that, because the attachments to the amendments to answer did not constitute amended SFRs, i.e., they did not set forth amounts "shown as tax on any return" within the meaning of I.R.C. sec. 6651(a)(2), the I.R.C. sec. 6651(a)(2) addition to tax for the years in issue must be based upon the tax liabilities shown on the original SFRs, not upon the larger tax liabilities set forth in the amendments to answer.

6. *Held*, *further*, P–H is subject to sanction under I.R.C. sec. 6673(a)(1) for procedures instituted primarily for delay, etc.

Vivian L. Rader and Steven R. Rader, pro sese.

*Thomas G. Hodel*, *Matthew A. Houtsma*, *Luke D. Ortner*, and *Robert A. Varra*, for respondent.

HALPERN, *Judge*: These consolidated cases involve the following determinations of deficiencies in and additions to petitioners' 2003–06 and petitioner Steven R. Rader's 2008 Federal income tax:[2]

*Additions to tax*

| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2)[1] | Sec. 6654(a) |
|------|-----------|-----------------|-------------------|--------------|
| 2003 | $139,964  | $29,804         | ---               | ---          |
| 2004 | 136,414   | 30,693          | ---               | $3,909       |
| 2005 | 144,511   | 32,515          | ---               | 5,797        |
| 2006 | 212,648   | 47,846          | ---               | 10,063       |
| 2008 | 7,859     | 1,768           | $1,061            | 253          |

[1] With respect to the sec. 6651(a)(2) addition to tax for 2003–06, the notices of deficiency for those years state: "The amount of the addition to tax cannot be determined at this time, but an addition to tax of 0.5 percent will be imposed for each month, or fraction thereof, of nonpayment, up to 25 percent, based on the liability shown on this report." Respondent included

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all dollar amounts to the nearest dollar.

the omitted amounts in his pretrial memorandum, which the Court received on May 22, 2013, after the maximum 50-month period for additions to tax under sec. 6651(a)(2) had run its course for petitioners' 2003–06 tax years. Those amounts were $33,116 for 2003, $34,104 for 2004, $36,128 for 2005, and $48,909 for 2006. Those same amounts were included as sec. 6651(a)(2) additions to tax in the 2003–06 substitutes for returns that respondent prepared pursuant to sec. 6020(b) and which constituted the basis for the notices of deficiency pertaining to those years. Respondent does not explain the seemingly contrary statement in the notices that those amounts could not yet be determined.

Respondent issued identical notices of deficiency (notices) for 2003–06 to each petitioner on February 11, 2011, on the grounds that he was unable "to determine which of the petitioners received the income during * * * [2003–06]" and he did not want to be "whipsawed" (i.e., lose the case because he attributed the income to the wrong taxpayer). At the conclusion of the trial, however, respondent conceded that any tax deficiencies that the Court might determine and any additions to tax and penalties, "to the extent that they follow the deficiencies" that the Court might impose, would be attributed to Mr. Rader, and no tax deficiencies, additions to tax, or penalties would be attributed to petitioner Vivian L. Rader. Thus, all tax deficiencies, additions to tax and penalties at issue herein are directed to Mr. Rader (petitioner).

In his petitions, petitioner states his intention to "contest" the notices, thus, in effect, assigning error to respondent's determinations.

On June 6, 2013, we issued an order granting respondent's motions (1) for leave to file amendments to answer in docket Nos. 11409–11 and 11476–11, which involve petitioners' 2003–06 taxable years, and (2) to consolidate for trial, briefing, and opinion, all three cases. In his amendments to answer, respondent acknowledged that the notices for 2003–06 erroneously determined the deficiency amounts and additions to tax on the basis of an assumed "single" filing status for each petitioner rather than a "married filing separate" filing status (appropriate because petitioners were married during those years). Correcting for that error, in his amendments to answer respondent increased his proposed deficiency amounts and additions to tax for 2003–06 as follows:

*Additions to tax*

| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654(a) |
|------|-----------|-----------------|-----------------|--------------|
| 2003 | $146,235 | $31,215 | $34,684 | --- |
| 2004 | 142,828 | 32,136 | 35,707 | $4,093 |
| 2005 | 151,072 | 33,991 | 37,768 | 6,060 |
| 2006 | 219,412 | 49,368 | 54,853 | 10,383 |

At the conclusion of the trial, the Court, on its own motion, invoked the application of section 6673(a)(1), which, as pertinent, empowers the Court to sanction a taxpayer for instituting or maintaining a proceeding primarily for delay or for maintaining a frivolous or groundless position.

Except for the increases in the deficiency amounts and additions to tax, petitioners bear the burden of proof. *See* Rule 142(a). [3]

FINDINGS OF FACT

At the time the petitions were filed, petitioners resided in Colorado.

During the years in issue, petitioner was a self-employed plumber, paid by his customers for plumbing services he provided to them. Petitioner did not file Federal income tax returns for the years in issue, and, therefore, he failed to report any income from his plumbing business or any other income attributable to those years. One of respondent's revenue agents began an examination of petitioner's failures to file for the years in issue. After verifying that petitioner had been issued (1) a plumbing license in 1995, which remained in active status as of December 31, 2008, and (2) multiple plumbing permits during 2003–06, the revenue agent acquired and analyzed petitioner's bank records for 2003–06 to determine deposits that might have represented unre-

[3] Petitioners have not invoked sec. 7491(a), which shifts the burden of proof to the Commissioner in certain situations. In any event, sec. 7491(a) is inapplicable herein because petitioners have failed to introduce credible evidence that respondent's adjustments were in error, *see* sec. 7491(a)(1), nor have they shown that they have satisfied the preconditions for its application, *see* sec. 7491(a)(2). Moreover, the revenue agent's ability to establish that petitioner was a plumber and made substantial bank deposits during the years in issue, *see* discussion *infra*, satisfied the requirement to establish "some reasonable foundation" for the deficiency, *see, e.g.*, *Erickson v. Commissioner*, 937 F.2d 1548, 1551 (10th Cir. 1991), *aff'g* T.C. Memo. 1989–552.

ported income. For 2008, he examined information-return documents filed by customers paying petitioner, as reported under petitioner's Social Security number, in order to establish his reportable gross income from his plumbing business for 2008. In reconstructing petitioner's reportable gross income from his plumbing business for 2003–06, the examining agent subtracted from the gross deposits listed in the bank statements loans, transfers, and other amounts that would not constitute income. On the basis of his bank deposits analysis for 2003–06 and the information returns for 2008, respondent concluded that petitioner's income from his plumbing business was $351,449, $387,714, $420,818, and $577,811 for 2003–06, respectively, and at least $34,174 for 2008. In addition, respondent determined that petitioner received additional income in the form of a "title wire transfer" of $137,477 in 2003, a "limited international funds check" of $1,500 in 2004, and "Colorado land title checks" totaling $66,352 representing the net proceeds from the sale of two parcels of real property in 2006, all of which he treated as long-term capital gain.

In connection with the two 2006 payments, the payor withheld and paid to the IRS $25,000 from one and $2,500 from the other, which represented 10% of the gross proceeds from the sale of each parcel. The withholdings were made and reported by the title company as escrow agent (presumably on behalf of the purchasers) on a Form 8288–A, Statement of Withholding on Dispositions by Foreign Persons of U.S. Real Property Interests, a form used pursuant to regulations under section 1445(a). *See* sec. 1.1445–1(c)(1), Income Tax Regs. Although petitioners were not foreign persons subject to section 1445, it appears that the title company felt it necessary to withhold in accordance with that section because petitioners, as transferors, failed to furnish either a certification of non-foreign-person status or a taxpayer identification number (TIN), as required by section 1445(b)(2) and section 1.1445–2(b)(2)(i), Income Tax Regs., for exemption from withholding. See also the instructions for Form 8288, U.S. Withholding Tax Return for Dispositions by Foreign Persons of U.S. Real Property Interests, to which the Form 8288–A must be attached.

Petitioners have failed to furnish evidence of entitlement to any deductions offsetting the foregoing items of income.

On the basis of his reconstruction of petitioner's income, as aforesaid, respondent prepared substitutes for returns (SFRs) for the years in issue, consisting, in each case, of a Form 13496, IRC Section 6020(b) Certification, signed by the IRS revenue agent who prepared the SFR, a Form 4549–A, Income Tax Discrepancy Adjustments,[4] and a Form 886–A, Explanations of Items. Those SFRs incorporated the above-described adjustments to income and the tax liabilities and additions to tax set forth in the notices. Exhibit A attached to respondent's amendments to answer in docket Nos. 11409–11 and 11476–11, in order to reflect petitioners' filing status as "married filing separate" (rather than "single") consists of revised Forms 4549–A and Forms 5278, Statement—Income Tax Changes, both of which incorporate the increased amounts resulting from that change in filing status.

OPINION

## I. *Tax Deficiencies*

### A. *Introduction*

Petitioners do not directly dispute respondent's adjustments to petitioner's income during the years in issue as reflected in the SFRs, and, indeed, petitioner's admission at trial that he earned income from his plumbing business and the evidence of his real estate sales sufficiently link him to income-producing activities that support respondent's adjustments. Instead, petitioners attack the sufficiency of the SFRs on technical grounds and, thus, attack indirectly the contents thereof. They also allege that the tax deficiency for 2006 must be offset by the taxes withheld and paid to the IRS on their real estate sales, and they raise a Fifth Amendment (to the United States Constitution) objection.[5]

---

[4] The 2008 SFR included a Form 4549, Income Tax Examination Changes, rather than a Form 4549–A.

[5] Petitioners also raise evidentiary objections and continue to argue that the notice addressed to Mrs. Rader is invalid because she had no income for the years in issue. The evidentiary objections were overruled at trial and the dispute with respect to Mrs. Rader's liability is moot because, as noted *supra*, respondent conceded at trial that any deficiences and additions to tax and penalties related thereto will be attributed solely to petitioner.

B. *Sufficiency of the SFRs*

Essentially, petitioners argue that the SFRs are invalid because they fail "to cite a deficiency statute and/or a tax statute from which a deficiency and penalties could arise." They also cite the fact that the SFRs were not attached to what petitioners refer to as a "nearly blank SFR 1040" that petitioners believe (from IRS transcripts) "was filed, processed and posted to" petitioners' account "three years prior to the dates on the alleged certifications."

To constitute a section 6020(b) SFR, "the return must be subscribed, it must contain sufficient information from which to compute the taxpayer's tax liability, and the return form and any attachments must purport to be a 'return'." *Spurlock v. Commissioner*, T.C. Memo. 2003–124, 2003 WL 1987156, at *10. The SFRs that respondent filed on petitioners' behalf each consisted of an IRC Section 6020(b) Certification (Form 13496), the income tax examination changes (either Form 4549–A or Form 4549), and an explanation of the changes (Form 886–A). That combination of documents is sufficient to constitute a valid SFR under section 6020(b). *See Gleason v. Commissioner*, T.C. Memo. 2011–154, 2011 WL 2600917, at *12. There is no requirement that a valid SFR include a Form 1040, U.S. Individual Income Tax Return, executed on behalf of the taxpayer. *See id.*; *see also Nix v. Commissioner*, T.C. Memo. 2012–304, at *13–*14, *aff'd*, 553 Fed. Appx. 960 (11th Cir. 2014); *Holloway v. Commissioner*, T.C. Memo. 2012–137, 2012 WL 1727685, at *2; sec. 301.6020–1(b)(2), Proced. & Admin. Regs. Moreover, respondent had the right under section 6020(b) to elect married filing separately status for petitioners rather than joint filing status. *See Smalldridge v. Commissioner*, 804 F.2d 125, 127–128 (10th Cir. 1986), *aff'g* T.C. Memo. 1984–434; *Conovitz v. Commissioner*, T.C. Memo. 1980–22, 1980 Tax Ct. Memo LEXIS 567, at *12.[6] In these cases, respondent elected that status by

---

[6] The Court of Appeals for the Tenth Circuit in *Smalldridge v. Commissioner*, 804 F.2d 125, 127–128 (10th Cir. 1986), *aff'g* T.C. Memo. 1984–434, held that the Commissioner's election of married filing separately status on an SFR was binding where, as in that case, the married taxpayers' right to elect joint filing status had expired pursuant to sec. 6013(b)(2)(B) (now sec. 6013(b)(2)(A)), which prohibits married taxpayers from electing joint filing status more than three years after the initial due date of their return. In *Millsap v. Commissioner*, 91 T.C. 926 (1988), however, we re-

way of amendments to answer rather than in connection with the preparation of petitioners' 2003–06 SFRs. The change in filing status resulted in an increase in the tax deficiencies and additions to tax set forth in the notice for 2003–06. [7]

The SFRs executed by respondent pursuant to section 6020(b) were valid SFRs.

C. *Petitioners' Right to an Offset*

In their brief, petitioners ask for a finding that "there exists a failure on * * * [respondent's] part * * * to recognize receipt of a substantial payment from the closing on the sale of a piece of property." Although it is styled as a request for a proposed finding of fact, we interpret petitioners' request as their argument that they are entitled to an offset for the amounts withheld from the proceeds of their 2006 real estate sales and remitted to respondent.

Respondent acknowledges that $25,000 and $2,500 were withheld from the proceeds of the two real estate sales, respectively, and that those amounts were remitted to the IRS Service Center in Philadelphia. After noting the "peculiarities" of applying a withholding regime directed at foreign sellers of U.S. real property interests to petitioners, who were Colorado residents, respondent argues that (1) because "the withholding credit is not a factor in determining a tax deficiency", we are without jurisdiction to

jected the court's reasoning in *Smalldridge*, overruled or rejected several of our precedents, two of which were cited with approval by the court in *Smalldridge*, and held that the sec. 6013(b)(2) limitations on electing joint filing status are not a bar to married taxpayers' right to elect joint filing status at any time after the Commissioner's election of married filing separately status in preparing an SFR for the taxpayers. *See Millsap v. Commissioner*, 91 T.C. at 936–938. Petitioners have not attempted to elect joint filing status. Therefore, *Millsap* is inapplicable in these cases. Moreover, even if petitioners had attempted to elect joint filing status, we would be required to reject the attempt pursuant to *Golsen v. Commissioner*, 54 T.C. 742 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971), because of the likelihood that any appeal of these cases would be to the Court of Appeals for the Tenth Circuit, which decided *Smalldridge*. *See Millsap v. Commissioner*, 91 T.C. at 937 n.23 ("In accord with our holding in *Golsen* * * * we will follow *Smalldridge* * * * in all cases appealable to the 10th Circuit.").

[7] As discussed *infra*, because the amendments to answer do not incorporate corrected or amended SFRs for 2003–06, we must reject respondent's increases in the sec. 6651(a)(2) addition to tax for those years.

consider it, citing *Forrest v. Commissioner*, T.C. Memo. 2011–4, 2011 WL 13626, discussed *infra*, and (2) even if Mrs. Rader were entitled to a credit for the withholding applied to her, we could not treat that withholding as a refundable overpayment under section 6512(b)(1) because the notice mailing date, February 11, 2011, which constitutes the deemed filing date of Mrs. Rader's refund claim for 2006, was more than two years after the overpayment, deemed, pursuant to section 6513(b)(1), to have occurred on April 15, 2007, the due date of her 2006 return. *See* secs. 6512(b)(3)(B), 6511(b)(2)(B); *see also Commissioner v. Lundy*, 516 U.S. 235, 247–250 (1996); *Healer v. Commissioner*, 115 T.C. 316, 319–323 (2000).

We agree with respondent that we may not order a refund of the deemed overpayment to Mrs. Rader for her share of the amount withheld from the proceeds of the 2006 real estate sales.[8] In *Lundy*, the Supreme Court applied the two-year lookback (to date of payment) rule of section 6511(b)(2)(B) (rather than the three-year lookback (to date of return filing) rule of section 6511(b)(2)(A)) under circumstances in which the taxpayer filed a return after issuance of the notice of deficiency, and, in *Healer*, we followed *Lundy* and rejected the taxpayer's argument that an SFR constituted a return filed by the taxpayer for purposes of section 6511. Thus, the 2006 SFR that respondent executed on Mrs. Rader's behalf on January 21, 2011, did not give her three years from that date in which to assert a refund claim for 2006 pursuant to section 6511(b)(2)(A).

We also agree with respondent that we may not offset petitioner's 2006 tax deficiency by the amount of the withheld taxes, but not for the reasons stated by respondent.

In *Forrest*, the Commissioner sought to increase a taxpayer's deficiency by the amount of Federal income taxes withheld by the State of California and claimed as a credit by the taxpayer from a 2005 settlement payment (on account of the termination of an employment-related lawsuit) that the parties agreed was not includible in the taxpayer's

---

[8] We reject, however, respondent's argument that Mrs. Rader is entitled to no credit simply because she stated that none of the sales proceeds were hers. The record indicates that she and petitioner were coowners of the properties, and the title company issued a Form 8288–A to each of them.

income until 2006. Thus, the credit for the withheld taxes claimed by the taxpayer for 2005 constituted an overstated credit. In considering the Commissioner's claim with respect to the withheld taxes we stated:

> Under section 6211(b)(1) a deficiency is determined "without regard to payment on account of estimated tax, without regard to the credit under section 31". Section 31 generally allows the taxpayer to claim a credit for Federal income tax withheld from wages for that taxable year. The amount of an overstated credit may be summarily assessed and is not subject to deficiency procedures. * * * [*Forrest v. Commissioner*, 2011 WL 13626, at *3.]

We then concluded: "Since the [section 31] withholding credit issue is not a factor in determining the tax deficiency, we have no jurisdiction to consider it and therefore may not decide whether petitioner is entitled to a Federal income tax withholding credit * * * for the 2005 tax year." *Id.*

In pertinent part, section 6211(a), which provides the general definition of a "deficiency", states:

> SEC. 6211. DEFINITION OF DEFICIENCY.
>   (a) IN GENERAL.—For purposes of this title in the case of income * * * taxes imposed by subtitle[] A * * * the term "deficiency" means the amount by which the tax imposed by subtitle A * * * exceeds the excess of—
>     (1) the sum of
>       (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus
>       (B) the amounts previously assessed (or collected without assessment) as a deficiency, over—
>     (2) the amount of rebates, as defined in subsection (b)(2), made.

In its entirety, section 6211(b)(1), upon which our decision in *Forrest* was based, provides:

> SEC. 6211(b). RULES FOR APPLICATION OF SUBSECTION (a).—For purposes of this section—
>   (1) The tax imposed by subtitle A and the tax shown on the return shall both be determined without regard to payment on account of estimated tax, without regard to the credit under section 31, without regard to the credit under section 33, and without regard to any credits resulting from the collection of amounts assessed under section 6851 or 6852 (relating to termination assessments).

Thus, only the taxes, credits, etc., listed in section 6211(b)(1), i.e., estimated tax payments, the section 31 and section 33 credits, and "credits resulting from the collection

of amounts assessed under section 6851 or 6852", are to be disregarded in determining the amount of any deficiency under section 6211(a).

Petitioners were subjected to income tax withholding under section 1445, applicable to payments to foreign persons on the sale of U.S. real property interests. Withholding under section 1445 does not give rise to a section 31 credit. That is because it does not constitute an "amount withheld as tax under chapter 24 [sections 3401–3406]". *See* sec. 31(a)(1). In reaching that conclusion, we note that the withholding from the proceeds of petitioners' 2006 real property sales, even though prompted, in part, by petitioners' failure to supply the title company payor with a TIN, did not constitute backup withholding under section 3406 because neither of those sales involved a "reportable payment" under section 3406(b)(1)(A) and (B) and (3). Therefore, *Forrest*, which involved a section 31 credit, is inapposite and not controlling.

We conclude, however, that, although the section 1445 withholding herein was applied to U.S. rather than foreign persons, (i.e., nonresident alien individuals, *see* sec. 1.1445–2(b)(2)(i), Income Tax Regs. (flush language)), it gave rise to a section 33 credit. Therefore, pursuant to section 6211(b)(1), we must disregard it in determining petitioner's 2006 deficiency.

Section 33 provides a credit for "the amount of tax withheld at source under subchapter A of chapter 3 (relating to withholding of tax on nonresident aliens and on foreign corporations)." Subchapter A of chapter 3 encompasses section 1445. Section 1445(a) generally provides that "in the case of any disposition of a United States real property interest * * *, the transferee shall * * * withhold a tax equal to 10 percent of the amount realized on the disposition." Section 1445(b) provides a list of exemptions from the section 1445(a) withholding requirement. Section 1445(b)(2) generally provides such an exemption "if the transferor furnishes to the transferee an affidavit by the transferor stating, under penalty of perjury, the transferor's United States * * * [TIN] and that the transferor is not a foreign person." *See also* sec. 1.1445–2(b)(2)(i), Income Tax Regs. (to the same effect). It is clear on the face of the Forms 8288–A issued by the title company payor that it did not have a TIN for petitioners, and petitioners have failed to demonstrate that they furnished to

the title company either a TIN or the affidavit/certification of non-foreign-person status required by section 1445(b)(2) and the regulations thereunder. Moreover, although section 1.1445–2(b)(1), Income Tax Regs., states that section 1445 and the regulations thereunder "do not impose any obligation upon a transferee to obtain a certification from the transferor" and that "a transferee may instead rely upon other means to ascertain the non-foreign status of the transferor", it appears that the title company was unwilling to pursue that option and risk becoming liable for the nonwithheld tax pursuant to section 1.1445–1(e), Income Tax Regs., should its ascertainment of non-foreign-person status prove to be incorrect. *See* sec. 1.1445–2(b)(1), Income Tax Regs. (last sentence of first paragraph).

Thus, rightly or wrongly, the title company payor withheld tax pursuant to section 1445(a), thereby giving rise to petitioners' right to a section 33 credit. Because section 6211(b)(1) specifically excludes the section 33 credit from the deficiency computation, we agree with respondent and hold that the withheld taxes at issue herein are not to be taken into consideration in determining petitioner's 2006 deficiency. [9]

D. *Petitioners' Fifth Amendment Objection*

During the trial, petitioner was asked whether he had filed a return for 2003. Among petitioner's grounds for initially refusing to answer that question was his invoking of his right, under the Fifth Amendment, not to "be compelled in any criminal case to be a witness against himself". U.S. Const. amend. V. Mrs. Rader, who testified as to the issue, attempted to justify petitioner's assertion of a Fifth Amendment privilege on the ground that the agent assigned to their case appeared to be connected to the IRS Criminal Investiga-

---

[9] Also exempt from the requirement to withhold under sec. 1445(a) are sales of U.S. real property interests for $300,000 or less if "the property is acquired by the transferee for use by him as a residence". *See* sec. 1445(b)(5); sec. 1.1445–2(d)(1), Income Tax Regs. Petitioners' 2006 real property sales were for $250,000 and $25,000, respectively. The record is silent regarding the buyers' intended use of the properties, and we can only assume that the title company payor did not avail itself of the sec. 1445(b)(5) exemption either because (1) the buyers did not intend to use the properties as a residence or (2) it was not aware of the exemption.

tion Division (CID). Therefore, his request to examine petitioners' books and records and make a "visual examination" of petitioners' premises implied "that there was some kind of criminal investigation going on." We concluded that petitioner had not "shown a well founded fear of prosecution", overruled his Fifth Amendment claim, and compelled him to answer the question, whereupon he acknowledged that he had not filed returns for any of the years in issue.

On brief, petitioner reiterates his claim of Fifth Amendment protection and, impliedly, criticizes the Court for rejecting that claim at trial, in what we can only assume is an effort to have his admissions of nonfiling stricken from the record. What that would accomplish is a mystery as there is no evidence in the record on which to base a finding that petitioner did file a return for any of the years in issue, nor does petitioner claim that he filed a return for any of those years.

In any event, we hereby affirm our rejection at trial of petitioner's Fifth Amendment claim. There is no evidence that petitioner was actually under criminal investigation for any of the years in issue. In order for an individual to validly claim the privilege against self-incrimination, there must be a "real and appreciable danger" from "substantial hazards of self incrimination", and the individual must have "reasonable cause to apprehend (such) danger from a direct answer to questions posed to him." *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir. 1980) (internal quotation marks and citations omitted); *see also United States v. Schmidt*, 816 F.2d 1477, 1481 (10th Cir. 1987) (stating that the risk of incrimination resulting from compelled testimony must be "substantial and real, not merely trifling or imaginary" (internal quotation marks omitted)). Petitioner's apprehension of criminal liability, upon the basis of an unconfirmed suspicion that the examining agent was somehow connected with CID, even if genuine, does not, in the context of a civil audit examination with no actual threat of a criminal investigation, meet the foregoing standard. "The fifth amendment privilege cannot be used as a method of evading payment of lawful taxes." *Edelson v. Commissioner*, 829 F.2d 828, 832 (9th Cir. 1987), *aff'g* T.C. Memo. 1986–223.

E. *Conclusion*

Petitioner is liable for the income tax deficiencies that respondent determined for the years in issue.

II. *Additions to Tax*

A. *Introduction*

Respondent determined that petitioner is liable for additions to tax pursuant to sections 6651(a)(1) and (2) and 6654. Respondent has the burden of production with respect to those additions to tax. *See* sec. 7491(c). To meet that burden, respondent must produce evidence showing that the additions to tax are appropriate. *See id.*; *Higbee v. Commissioner*, 116 T.C. 438, 446 (2001). Once respondent satisfies that burden, petitioner has the burden of proof with respect to exculpatory factors such as reasonable cause, *see Higbee v. Commissioner*, 116 T.C. at 446–447, except that respondent bears the overall burden of proof with respect to his increases in the additions to tax, *see* Rule 142(a); *Arnold v. Commissioner*, T.C. Memo. 2003–259, 2003 WL 22053838, at *4, i.e., respondent must prove that there were not exculpatory factors.

B. *Respondent's Section 6651(a)(1) and (2) and 6654 Determinations*

Section 6651(a)(1) provides for an addition to tax in the event a taxpayer fails to file a timely return (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect. The amount of the addition is equal to 5% of the amount required to be shown as tax on the delinquent return for each month or fraction thereof during which the return remains delinquent, up to a maximum addition of 25% for returns more than four months delinquent.

Section 6651(a)(2) provides for an addition to tax for failure to timely pay "the amount shown as tax on any return specified in paragraph (1)" unless the taxpayer establishes that the failure was due to reasonable cause and not willful neglect. The addition is calculated as 0.5% of the amount shown as tax on the return but not paid, with an additional 0.5% for each month or fraction thereof during which the failure to pay continues, up to a maximum of 25%.

*Id.* The amount of the addition to tax under section 6651(a)(2) reduces the addition to tax under section 6651(a)(1) for any month for which both additions to tax apply. *See* sec. 6651(c)(1). Pursuant to section 6651(g)(2), SFRs prepared by the Commissioner under section 6020(b) are treated as taxpayer returns for purposes of determining the addition to tax under section 6651(a)(2).

Section 6654(a) and (b) provides for an addition to tax in the event of an underpayment of a required installment of individual estimated tax. Each required installment of estimated tax is equal to 25% of the "required annual payment", which, in turn, is equal to the lesser of (1) "90 percent of the tax shown on the return for the taxable year (or, if no return is filed, 90 percent of the tax for such year)", or (2) if the individual filed a return for the immediately preceding year, 100% of the tax shown on that return. Sec. 6654(d)(1)(A) and (B). Except in very limited circumstances not applicable herein, *see* sec. 6654(e)(3)(B), section 6654 provides no exception for reasonable cause or lack of willful neglect.

It is undisputed that petitioner failed to (1) file returns, (2) discharge his tax liabilities, or (3) pay any estimated tax for the years in issue. Thus, respondent has satisfied his burden of production, under section 7491(c), with respect to his imposition of additions to tax under sections 6651(a)(1) and (2) and 6654.

Petitioners offer only meritless arguments against respondent's imposition of additions to tax; e.g., in opposition to imposition of the section 6651(a)(1) addition to tax, that nothing "he has read in his research of the law states he is required to file a return"; that the SFRs were not valid returns "showing an amount due and unpaid" that could constitute a basis for imposition of the section 6651(a)(2) addition to tax; and that "[n]othing on the * * * [notice] demonstrates the computation of an 'income' tax upon which * * * [the section 6654] penalty is based." Petitioner's first argument ignores section 6012(a), pursuant to which he was required to file returns for the years in issue; his second argument is belied by the fact that the SFRs meet all of the requirements, discussed *supra*, for a valid return; and his third argument is belied by the notices themselves, which do, in fact, compute income tax deficiencies for the years in issue. We will not painstakingly further address petitioner's

assertions "with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit." *Crain v. Commissioner*, 737 F.2d 1417, 1417 (5th Cir. 1984); *see also Wnuck v. Commissioner*, 136 T.C. 498, 501–505 (2011). Moreover, the complete absence of evidence of exculpatory factors and petitioner's exclusive reliance on frivolous arguments as justification for his nonfiling of returns and nonpayment of tax support a finding that respondent has satisfied his burden of proof to show that no such factors exist, thereby justifying his increases in the additions to tax.

We will sustain respondent's imposition of additions to tax under sections 6651(a)(1) and (2) and 6654 for the years in issue. We conclude, however, that respondent has overstated the addition to tax under section 6651(a)(2) for 2003–06 by the amount of the increases in that addition to tax as set forth in respondent's amendments to answer.

As stated *supra*, section 6651(a)(2) imposes an addition to tax for failure to timely pay the amount shown as tax on a return, and section 6651(g)(2), in effect, states that SFRs are to be treated as taxpayer returns for purposes of determining the section 6651(a)(2) addition to tax. The notice for 2003–06 properly bases the section 6651(a)(2) additions to tax for 2003–06 on the amounts of tax shown on the 2003–06 SFRs. Respondent's amendments to answer with respect to petitioner's 2003–06 tax years, whereby he elects married filing separately filing status for petitioner, increases both petitioner's tax deficiencies for those years and the proposed additions to tax, which are based upon the increased tax deficiencies. All of those increased amounts are computed on attachments to the amendments to answer, which attachments consist of a new Form 4549–A, a Form 5278, and computations of the various penalty amounts and of petitioner's self-employment tax for 2003–06. Respondent has failed to attach to his amendments to answer a Form 13496 for any of the years covered by the amendments to answer. The Form 13496, in pertinent part, states: "The officer of the IRS identified below, authorized by Delegation Order 182, certifies the attached pages constitute a valid return under section 6020(b)." The attachments to the amendments to answer satisfy one of the requirements of *Gleason*, *Spurluck*, and section 301.6020–1(b)(2), Proced. & Admin. Regs., for a valid

return, i.e., that it "contain[ ] sufficient information from which to compute * * * [petitioner's] tax liability". However, without their having been subscribed to or certified by an authorized Internal Revenue Officer or employee, under those same authorities, the attachments do not "purport[ ] to be", and do not constitute, a section 6020(b) return for any of the 2003–06 tax years. Therefore, we sustain the section 6651(a)(2) additions to tax set forth in the notice for 2003–06 and reject the increases to those amounts set forth in respondent's amendments to answer.

## III. *Section 6673(a)(1) Penalty*

As noted *supra*, at the conclusion of the trial the Court, on its own motion, invoked the application of section 6673(a)(1).

In pertinent part, section 6673(a)(1) provides a penalty of up to $25,000 if the taxpayer has instituted or maintained proceedings before the Tax Court primarily for delay or the taxpayer's position in the proceeding is frivolous or groundless. "The purpose of section 6673 is to compel taxpayers to think and to conform their conduct to settled principles before they file returns and litigate." *Takaba v. Commissioner*, 119 T.C. 285, 295 (2002). "A taxpayer's position is frivolous if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law." *Goff v. Commissioner*, 135 T.C. 231, 237 (2010).

Petitioner makes no principled defense of his failure to (1) file returns or pay tax for the years in issue with respect to the substantial earnings from his plumbing business or (2) report and pay tax on his capital gains from the 2006 real property sales. Nor would he cooperate with respondent in reconstructing the income from his plumbing business. Rather, petitioner makes groundless arguments attacking the SFRs and the notices and makes unwarranted assertions of Fifth Amendment rights. Petitioner's meritless arguments are frivolous within the foregoing definition of that term. Moreover, petitioner's testimony during the trial and arguments on brief are consistent with an intent to delay the collection of income taxes due and owing. *See Winslow v. Commissioner*, 139 T.C. 270, 276 (2012). On that basis we

hereby impose on petitioner a penalty under section 6673(a)(1) of $10,000. [10]

> *Decision will be entered for petitioner in docket No. 11409–11, and appropriate decisions will be entered in docket Nos. 11476–11 and 27722–11.*

---

[10] We acknowledge that petitioner's claim of offset for the taxes withheld from the proceeds of the 2006 real property sales, although unsustainable, is not frivolous. That has no bearing upon, and does not justify, however, the frivolous nature of petitioners' overall position in these cases. After all, the fact that a broken clock tells the correct time twice each day does not alter the fact that it is broken.