T.C. Memo. 2018-165

UNITED STATES TAX COURT

ROBERT F. DE SYLVA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 135-16.                          Filed September 27, 2018.

Robert F. de Sylva, pro se.

<u>Casinova O. Henderson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ASHFORD, <u>Judge</u>:  Respondent determined a deficiency of $20,045 in

petitioner's Federal income tax and additions to tax pursuant to sections

6651(a)(1) and (2) and 6654 of $4,510, $2,806, and $359, respectively, for the

[*2] 2012 taxable year.[1]  The issues for decision are whether petitioner (1) is entitled to deduct certain expenses attributable to a boat rental business he claimed to operate, (2) is entitled to a net operating loss (NOL) carryover of $50,410, and (3) is liable for the additions to tax.[2]  We resolve all issues in favor of respondent.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and attached exhibits are incorporated herein by this reference.  Petitioner resided in California at the time the petition was filed with the Court.

Petitioner has a degree in electrical engineering from the University of California, Los Angeles (UCLA), which he received in the 1990s.  Since graduating from UCLA, petitioner has performed patent application drafting and review services.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Some monetary amounts are rounded to the nearest dollar.

[2]The basis of the Federal income tax deficiency determined against petitioner was that he had unreported self-employment income of $74,460 from patent drafting services he provided.  Before trial the parties agreed and stipulated that petitioner received this unreported income.  Petitioner challenges only his right to offset that income by certain deductions.  However, as discussed infra pp. 9-10, he abandoned the issue of whether he is entitled to deduct certain expenses attributable to the patent drafting services he provided and the issue of whether he is entitled to deduct a capital loss of $3,000.

[*3]   In December 2004 petitioner, without any prior boating experience, purchased a 1974 70-foot Tait boat.  Petitioner chose this boat because he believed the structure and size of its deck could be modified to support a landing pad for helicopters (helipad).  Petitioner believed that this modification would be unique for a boat this size; and because he had a helicopter pilot's license and also knew owners of helicopter companies, he could both use the boat personally and make money renting it out to companies and high-net-worth individuals.  Notwithstanding the proposed modification, at the time of purchase the boat needed a fair number of repairs to bring it up to a condition in which it could be rented.

At a time in 2005 not established by the record, Paul Oravecz, a friend of petitioner's from his UCLA days (who worked in residential construction and who also claimed to have clients interested in renting the boat), convinced petitioner that he should meet Stephen Haber and hire him to modify the boat to support a helipad and to make the needed repairs.  On June 28, 2005, petitioner contracted with Stephen B. Haber Construction, Inc. (Haber Construction), under a "Vessel Service Agreement" (VSA) to "refurbish, augment, adjust, and/or replace" features of the boat as authorized by petitioner.  Petitioner, pursuant to the VSA, was

**[\*4]** obligated to Haber Construction to (1) repay project costs, (2) pay a 20% "Supervision Fee", and (3) pay a commission from future boat rental revenues.

Haber Construction commenced work under the VSA but, by some time in 2006, did not complete the work and, according to petitioner, left the boat in disarray. Haber Construction later that year sued petitioner in Federal District Court to terminate the VSA, alleging that the condition of the boat was worse than he had represented.[3]

Petitioner employed several other contractors to repair the damage to the boat allegedly caused by Haber Construction and to fix it up the way he envisioned so that he could rent it out. However, petitioner began experiencing financial difficulties and could never afford to pay to have the necessary repairs completed.

In 2012 petitioner's boat was docked at the marina in Marina del Rey, California. During this time petitioner tried to do some repair work on the boat himself in combination with giving Mr. Oravecz and Mr. Oravecz's girlfriend access to the boat to assist with some of the repairs. Mr. Oravecz and Mr. Oravecz's girlfriend orally agreed that they would help fix parts of the boat and

---

[3]Petitioner countersued for damages. The record is silent as to the outcome of the Federal District Court litigation.

[*5] said they could secure renters and that petitioner could pay them from the fees paid by these renters. Ultimately, similar to the Haber Construction situation, Mr. Oravecz and Mr. Oravecz's girlfriend allegedly damaged the boat further, and petitioner's relationship with them devolved into litigation.[4]

Since petitioner's purchase of the boat, it has not been safe or certified to be rented and taken out on the open water. Petitioner did not have a business plan for rental of the boat. He has never had any contracts or agreements for rental of the boat, he has never marketed the boat as available for charter or rental, and he has never made a profit with respect to the boat.

During 2012 petitioner received payments of $800, $3,500, and $70,160 from Charles J. Kulas, Tanner Research, Inc., and Trellis Intellectual Property Law Group, P.C., respectively. These payments were compensation for patent-related services petitioner rendered to them in his capacity as a self-employed independent contractor.

Petitioner, however, did not file a Federal income tax return and did not make any Federal tax payments for 2012. Consequently, using information return documents he received from the aforementioned payers, respondent prepared a substitute for return for petitioner for 2012 pursuant to section 6020(b) (2012

---

[4]The record is silent as to the outcome of this litigation.

[*6] SFR).[5] The 2012 SFR included as income, i.e., nonemployee compensation, the aforementioned payments and allowed a standard deduction for a single filer and one exemption.

On September 28, 2015, respondent issued a notice of deficiency to petitioner based on the 2012 SFR, determining that he (1) had self-employment income of $74,460, (2) was liable for an income tax deficiency of $20,045, and (3) was liable for additions to tax under sections 6651(a)(1) and (2) and 6654 of $4,510, $2,806, and $359, respectively.

On December 28, 2015, shortly before petitioning this Court for redetermination of the deficiency and additions to tax, petitioner submitted to respondent a Form 1040, U.S. Individual Income Tax Return, for 2012. On this 2012 Form 1040, petitioner claimed the following: (1) a net loss totaling $33,326 from two businesses--"Patent Drafting" and "Boat Rental"--he operated, which he detailed on two Schedules C, Profit or Loss From Business, attached to the 2012 Form 1040; (2) a $3,000 capital loss deduction; (3) a $50,410 NOL; and (4) the standard deduction for single status and one exemption for himself.

---

[5]Petitioner also did not file a Federal income tax return for the taxable years 2007-11, despite being required to do so. Accordingly, respondent prepared a substitute for return under sec. 6020(b) for each of those years as well.

**[*7]**   On the Schedule C for his patent drafting business, he reported gross receipts of $74,460 and total expenses of $18,909.  These expenses consisted of $1,029 for car and truck expenses; $855 for depreciation and a section 179 expense deduction; $759 for nonmortgage interest; $9,639 for rent or lease of business property other than vehicles, machinery, and equipment; $307 for supplies; $1,029 for taxes and licenses; $1,128 for deductible meals and entertainment; $3,467 for utilities; and $696 for other expenses consisting of $569 for business gifts and $127 for software.  Petitioner also reported on this Schedule C expenses for business use of his home of $10,060.

On the Schedule C for his boat rental business, petitioner reported gross receipts of $5,400 and total expenses of $84,217.  These expenses consisted of $1,010 for insurance; $8,205 for repairs and maintenance; and $75,002 for other expenses consisting of $24,592 for boat slip fees paid to the Marina del Rey marina to dock the boat and $50,410 for a section 465(d) carryover.[6]

Respondent neither accepted nor processed petitioner's 2012 Form 1040 and the attached Schedules C.

---

[6]We note that petitioner's claimed $50,410 sec. 465(d) carryover is a duplicate loss; he also claimed a $50,410 NOL on line 21 of the 2012 Form 1040. See supra p. 6.

**[\*8]**  In his petition, petitioner challenged the notice of deficiency on the ground that it "contradicts * * * [his] 2012 tax return, which has neither been audited nor subject to a due process hearing whereby substantial documentation/evidence supporting * * * [his] return can be presented."

## OPINION

### I.    Burden of Proof

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving otherwise.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Tax deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  This burden requires the taxpayer to demonstrate that the claimed deductions are allowable pursuant to some statutory provision and to substantiate the expenses giving rise to the claimed deductions by maintaining and producing adequate records that enable the Commissioner to determine the taxpayer's correct liability.  Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001).  In the case of an NOL deduction, this burden requires the taxpayer to substantiate the NOL deduction by establishing both the existence of the NOL and the amount that

**[\*9]** may be carried over to the year or years in question.[7] <u>United States v. Olympic Radio & Television, Inc.</u>, 349 U.S. 232, 235 (1955).

The Commissioner bears the burden of production with respect to the additions to tax under sections 6651 and 6654, <u>see</u> sec. 7491(c), but the taxpayer bears the burden of proving that the Commissioner's determinations with respect to the additions to tax should not be sustained, <u>see</u> <u>Wheeler v. Commissioner</u>, 127 T.C. 200, 207 (2006), <u>aff'd</u>, 521 F.3d 1289 (10th Cir. 2008).

## II. Failure To Pursue Certain Issues on Brief

On brief, petitioner claims only that he is entitled to a deduction for boat slip fees of $24,592 and an NOL carryover of $50,410, as reflected on the 2012

---

[7]We note and as we observed <u>supra</u> note 2, this case originated as an unreported income case. In an unreported income case the Internal Revenue Service (IRS) must provide some reasonable foundation connecting the taxpayer with the income-producing activity. <u>See</u> <u>Weimerskirch v. Commissioner</u>, 596 F.2d 358, 360 (9th Cir. 1979), <u>rev'g</u> 67 T.C. 672 (1977). Once the IRS has produced evidence linking the taxpayer with an income-producing activity, the burden of proof shifts to the taxpayer to prove by a preponderance of the evidence that the IRS' determination is arbitrary or erroneous. <u>Helvering v. Taylor</u>, 293 U.S. 507, 515 (1935). Similarly, under sec. 6201(d), if a taxpayer in any court proceeding asserts a reasonable dispute with respect to any item of income reported on an information return, the IRS shall have the burden of producing reasonable and probative information concerning such deficiency, in addition to such information return. We sustain respondent's determination of unreported income because petitioner agrees that he received this income. Petitioner does not otherwise contend that the burden of proof should shift to respondent under sec. 7491(a) as to any relevant issue of fact, nor has he established that he has met the requirements for shifting the burden of proof.

**[\*10]** Form 1040 he submitted in 2015 to respondent (but which respondent neither accepted nor processed).[8]  We thus conclude that petitioner has abandoned any argument or contention that he is entitled to the other claimed deductions reflected on the 2012 Form 1040 (i.e., the $3,000 capital loss, the expenses attributable to his patent drafting services, and the expenses attributable to the boat other than boat slip fees).  See McLaine v. Commissioner, 138 T.C. 228, 243 (2012); Mendes v. Commissioner, 121 T.C. 308, 312-313 (2003) (and cases cited threat); see also Rule 151(e)(4) and (5) (requiring that a party's brief set forth and discuss the points and arguments on which the party relies).[9]

III.    Trade or Business Deductions

Section 162 allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  Sec. 162(a); sec. 1.162-1(a), Income Tax Regs.  An expense is "ordinary" if it is "normal, usual, or customary" in the taxpayer's trade or business or arises from a transaction "of common or frequent occurrence in the type of business involved."

[8]Petitioner states on brief that arguments as to whether he may deduct "detailed line items" as reflected on the 2012 Form 1040 are "substantially irrelevant" and that he "does not herein argue details of the return, item by item."

[9]Even if we had not made this conclusion, we reject any argument or contention that petitioner is entitled to the other claimed deductions as there is not a scintilla of evidence in the record to show that he is so entitled.

[*11] <u>Deputy v. du Pont</u>, 308 U.S. 488, 495 (1940).  An expense is "necessary" if it is "appropriate and helpful" to the taxpayer's business, but it need not be absolutely essential.  <u>Commissioner v. Tellier</u>, 383 U.S. 687, 689 (1966) (quoting <u>Welch v. Helvering</u>, 290 U.S. at 113).  In contrast, a taxpayer may not deduct a personal, living, or family expense unless the Internal Revenue Code expressly provides otherwise.  Sec. 262(a).  The determination of whether an expense satisfies the requirements of section 162 is a question of fact.  <u>Cloud v. Commissioner</u>, 97 T.C. 613, 618 (1991) (citing <u>Commissioner v. Heininger</u>, 320 U.S. 467, 473-475 (1943)).

Whether a taxpayer is engaged in a trade or business is a question of fact to be decided on the basis of all the relevant facts and circumstances.  <u>Stanton v. Commissioner</u>, T.C. Memo. 1967-137, <u>aff'd</u>, 399 F.2d 326 (5th Cir. 1968); <u>see also</u> <u>Higgins v. Commissioner</u>, 312 U.S. 212, 217 (1941).  Applying this facts and circumstances test, courts have focused on the following three factors indicative of whether a trade or business exists:  (1) whether the taxpayer undertook the activity intending to earn a profit; (2) whether the taxpayer is regularly and actively involved in the activity; and (3) whether the taxpayer's activity has actually commenced.  <u>Jafarpour v. Commissioner</u>, T.C. Memo. 2012-165, slip op. at 14 (first citing <u>Commissioner v. Groetzinger</u>, 480 U.S. 23, 35 (1987); and then citing

**[\*12]** <u>McManus v. Commissioner</u>, T.C. Memo. 1987-457, <u>aff'd without published</u>

<u>opinion</u>, 865 F.2d 255 (4th Cir. 1988)).

Respondent contends that petitioner's boat rental activity was not a going

concern during 2012; in other words, that petitioner was not engaged in the active

conduct of a trade or business on the basis of the third factor, i.e., petitioner's boat

rental activity had not actually commenced.[10]

During 2012 petitioner did not rent out the boat to anyone. Since his

purchase of the boat in 2004, the boat has been unusable and never in any

condition to be rented. Consequently, petitioner has never had any contracts or

agreements for rental of the boat[11] or marketed the boat as available for charter or

_____

[10]At trial and on brief petitioner merely focuses on whether he undertook the boat rental activity intending to earn a profit, and respondent argues in the alternative that petitioner's boat rental activity, if found to be a going concern, was not operated for profit. Because we find that petitioner's boat rental activity has not actually commenced, as discussed <u>infra</u> pp. 12-13, we need not decide whether petitioner intended to earn a profit. Similarly, in the light of our finding, we obviously need not decide whether petitioner was regularly and actively involved in the boat rental activity.

[11]On the 2012 Schedule C for the boat rental business, petitioner reported gross receipts or sales of $5,400. However, at trial petitioner indicated that he did not receive any boat rental income in 2012, and on brief he acknowledged that the $5,400 may have been "a deposit of * * * [his] own funds back into his account which had been previously withdrawn". Also at trial, in the context of discussing his unfiled Federal income tax returns for 2010 and 2011, petitioner testified that either Mr. Oravecz or Mr. Oravecz's girlfriend paid him $5,000 in 2010 and

(continued...)

[*13] rental.  Accordingly, even though petitioner made a decision in 2004 to enter into a boat rental business by purchasing the boat and he has strived over a considerable period to repair it so that it can be rented out, he has yet to commence the boat rental activity and be engaged "in carrying on any trade or business" within the meaning of section 162(a).  Thus, we conclude that the boat slip fees of $24,592 are not deductible under section 162.  See Charlton v. Commissioner, 114 T.C. 333, 338 (2000) (holding taxpayers could not deduct expenses incurred while renovating cabins that were not offered for rent until four years later because it was not an active trade or business); see also sec. 195(a) and (b)(1) (a taxpayer may not deduct startup expenses for a year that predates the start of an active trade or business).

## IV.   NOL Deduction

Section 172 allows a deduction in a taxable year for the full amount of allowable NOL carrybacks from subsequent years and carryovers from previous years, as long as taxable income for the current year is not less than zero.  Sec.

---

[11](...continued)
$25,000 in 2011 for "back rent" for the time Mr. Oravecz accessed the boat while he was supposed to be repairing it.  There is, however, no evidence whatsoever to corroborate this.  Although we found petitioner to be genuine and candid, "[a]s we have stated many times before, this Court is not bound to accept a taxpayer's self-serving, unverified, and undocumented testimony."  Shea v. Commissioner, 112 T.C. 183, 189 (1999) (citing Tokarski v. Commissioner, 87 T.C. 74, 77 (1986)).

**[*14]** 172(a), (b)(2).  An NOL occurs in a tax year when deductions, as modified by section 172(d), exceed gross income for that year.  Sec. 172(c).  As noted with all deductions, see supra p. 8, a taxpayer is required to maintain adequate records substantiating the claimed NOL deduction, see sec. 6001; Obedin v. Commissioner, T.C. Memo. 2013-223, at *11, aff'd, 655 F. App'x 583 (9th Cir. 2016).

The only evidence offered herein to show the amount of the claimed NOL deduction and the NOL on which it was based consists of unfiled Federal income tax returns for 2009-11 that petitioner prepared.  The mere introduction into evidence of these returns, even if they had been filed, is clearly inadequate to sustain petitioner's burden of proof with respect to the claimed NOL deduction.  See Moore v. Commissioner, 8 B.T.A. 749, 754 (1927); see also Lawinger v. Commissioner, 103 T.C. 428, 438 (1994) ("Tax returns do not establish the truth of the facts stated therein.").  Accordingly, petitioner is not entitled to an NOL carryover in any amount for 2012.

V.    Additions to Tax

  A.    Failure To File

Section 6651(a)(1) authorizes the imposition of an addition to tax for failure to timely file a Federal income tax return unless the taxpayer shows that the failure

**[*15]** was due to reasonable cause and not due to willful neglect. United States v.

Boyle, 469 U.S. 241, 245 (1985).

The record establishes that no Federal income tax return was filed in

petitioner's name for 2012 (other than the 2012 SFR). Respondent thereby

satisfies his burden of production under section 7491(c).[12] Petitioner offered no

evidence at trial that his failure to file was due to reasonable cause and not due to

willful neglect, and on brief he makes no principled defense. Accordingly, we

find that petitioner is liable for the addition to tax under section 6651(a)(1).

B.    Failure To Pay

Section 6651(a)(2) authorizes the imposition of an addition to tax for failure

to timely pay the amount shown as tax on a Federal income tax return unless the

taxpayer shows that the failure was due to reasonable cause and not due to willful

neglect. In this regard the Commissioner's burden of production under section

7491(c) requires him to come forward with sufficient evidence that the tax was

shown on a Federal income tax return and was not paid. See Wheeler v.

Commissioner, 127 T.C. at 206; Cabirac v. Commissioner, 120 T.C. 163 (2003),

aff'd without published opinion, 94 A.F.T.R.2d (RIA) 2004-5490 (3d Cir. 2004).

---

[12]Under sec. 6651(g)(1), any return prepared under sec. 6020(b) is disregarded for purposes of sec. 6651(a)(1).

**[\*16]** In a case such as this where the taxpayer has not filed a Federal income tax return for the taxable year at issue, a substitute for return prepared by the Commissioner that meets the requirements of section 6020(b) is treated as the "return" filed by the taxpayer for purposes of section 6651(a)(2). See sec. 6651(g)(2); Wheeler v. Commissioner, 127 T.C. at 208-209.

To constitute a valid section 6020(b) substitute for return, "the return must be subscribed, it must contain sufficient information from which to compute the taxpayer's tax liability, and the return form and any attachments must purport to be a 'return'." Rader v. Commissioner, 143 T.C. 376, 382 (2014) (quoting Spurlock v. Commissioner, T.C. Memo. 2003-124, slip op. at 27), aff'd in part, appeal dismissed in part, 616 F. App'x 391 (10th Cir. 2015); see also sec. 301.6020–1(b)(2), Proced. & Admin. Regs.

The 2012 SFR consisted of a Form 13496, IRC Section 6020(b) Certification; a Form 4549, Income Tax Examination Changes; and a Form 886-A, Explanations of Items. This combination of documents is sufficient to constitute a valid section 6020(b) substitute for return. Rader v. Commissioner, 143 T.C. at 382. The record also establishes that petitioner made no Federal tax payments for 2012. Respondent thereby satisfies his burden of production under section 7491(c). As with his failure to file a Federal income tax return for 2012, petitioner

[*17] offered no evidence at trial that his failure to pay was due to reasonable cause and not due to willful neglect, and on brief he makes no principled defense. Accordingly, we find that petitioner is liable for the addition to tax under section 6651(a)(2).[13]

C.    Failure To Pay Estimated Tax

Section 6654(a) imposes an addition to tax "in the case of any underpayment of estimated tax by an individual". The addition to tax is calculated with reference to four required installment payments of the individual's estimated tax liability. Sec. 6654(c) and (d). Each required installment payment is equal to 25% of the "required annual payment", which in turn is equal to the lesser of: (1) 90% of the tax shown on the individual's return for that year (or, if no return is filed, 90% of the individual's tax for such year) or (2) if the individual filed a return for the preceding taxable year, 100% of the tax shown on the individual's return for the preceding taxable year. Sec. 6654(d)(1)(A) and (B). In this regard the Commissioner's burden of production under section 7491(c) requires him to produce evidence that the taxpayer had a "required annual payment", and in order to do so, he must establish the tax shown on the taxpayer's return for the previous

_____

[13]The application of the additions to tax under sec. 6651(a)(1) and (2) is limited as provided in sec. 6651(c).

**[\*18]** year or that the taxpayer filed no such return.  <u>Wheeler v. Commissioner</u>, 127 T.C. at 212; <u>Schlussel v. Commissioner</u>, T.C. Memo. 2013-185.

Respondent met his burden of production because the record establishes that petitioner did not file a Federal income tax return for 2011 or 2012.  Petitioner's "required annual payment" for 2012 thus equaled 90% of the tax due for that taxable year.  The record also establishes that petitioner made no Federal tax payments for 2012.  Petitioner has not argued that any of the statutory exceptions under section 6654(e) applies; indeed, he makes no principled defense.  Accordingly, we find that petitioner is liable for the addition to tax under section 6654(a).

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u> <u>respondent</u>.