T.C. Memo. 2020-50

UNITED STATES TAX COURT

MELVIN COLLINS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

NIKTA FATEMEH ABDOLRAHIM AND MELVIN COLLINS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 9649-14, 9650-14.          Filed April 23, 2020.

Melvin Collins and Nikta Fatemeh Abdolrahim, pro sese.

<u>Erika B. Cormier</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ASHFORD, <u>Judge</u>:  By statutory notice of deficiency dated January 23,

2014, respondent determined deficiencies in petitioners' Federal income tax,

[*2] additions to tax pursuant to section 6651(a)(1),[1] and civil fraud penalties[2]

pursuant to section 6663(a) for the 2009 and 2010 taxable years as follows:

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Civil fraud penalty[1] sec. 6663(a) |
|------|-----------|-------------------|-------------------|
| 2009 | $11,625 | $2,459 | $8,719 |
| 2010 | 19,083 | 4,276 | 14,312 |

[1]In the notice of deficiency respondent also determined that petitioners are liable for accuracy-related penalties under sec. 6662(a) if it is "determined that the underpayment of tax for tax years 2009 and 2010 is not due to fraud." After trial respondent conceded the accuracy-related penalties.

By a separate statutory notice of deficiency also dated January 23, 2014, respondent determined deficiencies in Mr. Collins' Federal income tax and additions to tax pursuant to sections 6651(a)(2) and (f) and 6654 for the 2011 and 2012 taxable years as follows:[3]

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Some monetary amounts are rounded to the nearest dollar. Figures may differ because of rounding.

[2]The civil fraud penalties are determined only against Mr. Collins.

[3]By a separate statutory notice of deficiency also dated January 23, 2014, respondent determined deficiencies in Ms. Abdolrahim's Federal income tax and additions to tax pursuant to secs. 6651(a)(1) and (2) and 6654 for the 2011 and 2012 taxable years. Ms. Abdolrahim timely petitioned this Court for redetermination of the deficiencies and additions to tax. The Court entered a stipulated decision ordering that pursuant to the agreement of the parties there are

(continued...)

[*3]

|  | | Additions to tax | | |
| Year | Deficiency | Sec. 6651(a)(2)[1] | Sec. 6651(f)[2] | Sec. 6654 |
| 2011 | $9,134 | --- | $6,622 | $181 |
| 2012 | 16,489 | --- | 11,955 | 296 |

[1]Respondent did not list amounts in the notice of deficiency for this addition to tax because it is calculated by reference to the number of months for which the taxpayer fails to pay the tax shown on a return (or substitute for return) following the due date for filing that return. This period continued to run after respondent issued the notice of deficiency. Accordingly, the amounts of this addition to tax will be calculated as part of the Rule 155 computations pursuant to this opinion.

[2]In the notice of deficiency respondent also determined that Mr. Collins is liable for additions to tax under sec. 6651(a)(1) if it is "determined that for taxable years 2011 and 2012 the failure to file on time was not due to fraud".

Petitioners resided in Massachusetts when they filed petitions with this Court for redetermination of the deficiencies, additions to tax, and penalties. These cases were consolidated for purposes of trial, briefing, and opinion pursuant to Rule 141(a).[4]

After certain concessions and deemed admissions, as discussed infra pp. 17-21, the following issues remain for decision.

---

[3](...continued)
no deficiencies in income tax, nor additions to tax, due from Ms. Abdolrahim for 2011 and 2012.

[4]The 2009, 2010, 2011, and 2012 taxable years will collectively be referred to as the years at issue.

[*4]   For the years at issue, whether certain cash deposits into petitioners' various bank accounts constitute taxable income to petitioners for 2009 and 2010 and to Mr. Collins for 2011 and 2012 in the following amounts:

| Year | Cash deposits |
|------|---------------|
| 2009 | $11,775 |
| 2010 | 5,475 |
| 2011 | 15,100 |
| 2012 | 29,350 |

For 2009 and 2010:

(1) whether petitioners are entitled to unreimbursed employee business expense deductions claimed on their Schedules A, Itemized Deductions;

(2) whether petitioners are entitled to rental real estate loss deductions claimed on their Schedules E, Supplemental Income and Loss;

(3) whether petitioners are entitled to business expense deductions attributable to an S corporation solely owned by Mr. Collins in amounts greater than respondent allowed;

(4) whether petitioners are liable for additions to tax for failure to timely file their tax returns; and

(5) whether Mr. Collins is liable for civil fraud penalties.

**[*5]**  For 2011 and 2012:

(1) whether Mr. Collins is entitled to business expense deductions claimed on Schedules C, Profit or Loss From Business, in amounts greater than respondent allowed;

(2) whether Mr. Collins is liable for additions to tax for failure to timely pay his liabilities; and

(3) whether Mr. Collins is liable for additions to tax for failure to make estimated tax payments.

We resolve all issues in favor of respondent.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.

I.    <u>Petitioners and Their Employment During the Years at Issue</u>

During the years at issue petitioners were a married couple although they legally separated sometime in 2010.  Their marital residence was a four-bedroom home owned by Ms. Abdolrahim on Grafton Street in Shrewsbury, Massachusetts (Grafton property).

The record is silent as to Ms. Abdolrahim's educational background, but professionally since 2002 and continuing up to the time of trial she has worked as

**[\*6]** an information technology engineer for the University of Massachusetts Medical School. During at least 2009 and 2010 she performed approximately 40% of her work from home.

Mr. Collins received a bachelor of science degree in electrical engineering, a master of business administration degree in finance, and a master of science degree in applied mathematics and computer science. Since approximately 1991 he has held himself out as a financial consultant although most of his business is tax return preparation. He conducted his business primarily, albeit not exclusively, through Collins Financial Enterprises, Inc. (CFE), an S corporation that he organized and solely owned.[5]

During the years at issue Mr. Collins conducted his business in space in the basement of the Grafton property which Ms. Abdolrahim rented to him (or indirectly rented to him through CFE). He also used that space for personal endeavors. Similarly, Ms. Abdolrahim used part of the basement to store personal items during the years at issue.

Mr. Collins estimated that he prepared "at least" 230 returns in 2009, 220 to 240 returns in 2010, 298 returns in 2011, and 118 to 130 returns in 2012. The Internal Revenue Service's (IRS) records indicated that Mr. Collins prepared at

---

[5]Mr. Collins was CFE's sole shareholder from 1999 to 2013.

[*7] least 200 returns under his individual Preparer Tax Identification Number (PTIN) and CFE's Employer Identification Number (EIN) during each of the years at issue. Specifically, the IRS' records showed that Mr. Collins prepared 248 returns during 2010 (175 returns under his PTIN and 73 returns under CFE's EIN), 254 returns during 2011 (5 returns under his PTIN and 249 returns under CFE's EIN), and 538 returns during 2012 (267 returns under his PTIN and 271 returns under CFE's EIN).[6] Mr. Collins also estimated that his fee for preparing an individual Federal income tax return without schedules was $35 to $45, for preparing an individual Federal income tax return with schedules was $120 to $140, and for an S corporation Federal income tax return was $250.[7]

## II. Petitioners' 2009 Joint Federal Income Tax Return

Petitioners prepared a joint Form 1040, U.S. Individual Income Tax Return, for 2009 (2009 joint return) and filed it late, on February 9, 2011.[8] On the 2009 joint return they listed the Grafton property address as their home address. They

---

[6]The record is silent as to the IRS' records showing the number of returns Mr. Collins prepared during 2009.

[7]The record is silent as to what Mr. Collins' fee was for preparing any other type of return.

[8]We also note that Mr. Collins prepared CFE's Form 1120S, U.S. Income Tax Return for an S Corporation, for 2009 (2009 CFE return) and filed it late, on January 31, 2013.

[*8] reported wages of $56,244, taxable refunds, credits or offsets of State and local income taxes of $1,257, and other income (reported on a Form 1099-S, Proceeds From Real Estate Transactions) of $660.  As relevant here petitioners attached to the 2009 joint return a Schedule A and a Schedule E.  They claimed $17,253 of itemized deductions on the Schedule A and an $8,924 loss on Schedule E.

A.    Schedule A for 2009

On the 2009 Schedule A petitioners reported, among other items, $4,450 of charitable gifts and $5,936 of miscellaneous deductions (before application of the 2% floor of section 67(a)), consisting of $5,857 for unreimbursed employee business expenses of Ms. Abdolrahim in connection with her job as an information technology engineer and $79 for tax preparation fees.  The details of  Ms. Abdolrahim's unreimbursed employee business expenses were shown on a Form 2106, Employee Business Expenses, also attached to the 2009 joint return, and those expenses consisted of the following:  (1) $430 for vehicle expenses using the standard mileage rate, (2) $15 for parking fees, tolls, and transportation, (3) $69 for meals and entertainment expenses (after reducing the amount by the 50% limitation imposed by section 274(n)), and (4) $5,343 for business expenses other

[*9] than vehicle expenses, parking fees, tolls, and transportation, travel expenses while away from home overnight, and meals and entertainment expenses.

B.      Schedule E for 2009

On the 2009 Schedule E petitioners reported rental income of $3,600 and expenses of $10,696, consisting of the following:  (1) $1,016 for automobile and travel expenses, (2) $536 for cleaning and maintenance, (3) $136 for insurance, (4) $2,711 for repairs, (5) $53 for supplies, (6) $1,249 for taxes, (7) $972 for utilities, and (8) $4,023 for depreciation expenses.  The rental income was for Ms. Abdolrahim's rental of space in the basement of the Grafton property to Mr. Collins for his business; the expenses, however, represented 25% of petitioners' total expenditures for the Grafton property.  On this Schedule E petitioners also reported a $1,828 loss from CFE.

III.    Petitioners' 2010 Joint Federal Income Tax Return

Petitioners prepared a joint Form 1040 for 2010 (2010 joint return) and filed it late, on April 12, 2012.[9]  On the 2010 joint return, as on the 2009 joint return, they listed the Grafton property address as their home address.  They reported wages of $53,053 and taxable refunds, credits or offsets of State and local income

---

[9]We also note that Mr. Collins prepared CFE's Form 1120S for 2010 (2010 CFE return) and filed it late, on January 31, 2013.

[*10] taxes of $434. As relevant here petitioners attached to the 2010 return a Schedule A and a Schedule E. They claimed $15,998 of itemized deductions on the Schedule A and a $10,221 loss on Schedule E. Additionally, as relevant here, they reported total tax of $1,433.

A.    Schedule A for 2010

On the 2010 Schedule A petitioners reported, among other items, $4,241 of charitable gifts and $5,633 of unreimbursed employee business expenses of Ms. Abdolrahim in connection with the same job she had in 2009 (before application of the 2% floor of section 67(a)). The details of Ms. Abdolrahim's unreimbursed employee business expenses were shown on a Form 2106, also attached to the 2010 joint return, and those expenses consisted of the following: (1) $419 for vehicle expenses using the standard mileage rate, (2) $27 for parking fees, tolls, and transportation, (3) $186 for meals and entertainment expenses (after reducing the amount by the 50% limitation imposed by section 274(n)), and (4) $5,001 for business expenses other than vehicle expenses, parking fees, tolls, and transportation, travel expenses while away from home overnight, and meals and entertainment expenses.

**[*11]** B.    Schedule E for 2010

On the 2010 Schedule E petitioners reported rental income of $4,000 and expenses of $10,944, consisting of the following:  (1) $1,094 for automobile and travel expenses, (2) $311 for cleaning and maintenance, (3) $131 for insurance, (4) $2,729 for repairs, (5) $37 for supplies, (6) $1,292 for taxes, (7) $962 for utilities, (8) $321 for yard maintenance, (9) $44 for "snow", and (10) $4,023 for depreciation expenses.  The rental income on the 2010 Schedule E, like the 2009 Schedule E rental income, was for Ms. Abdolrahim's rental of space in the basement of the Grafton property to Mr. Collins for his business; the expenses, however, represented 25% of petitioners' total expenditures for the Grafton property.  On this Schedule E petitioners also reported a $3,277 loss from CFE.

IV.    Mr. Collins' 2011 and 2012 Federal Income Tax Returns

Mr. Collins failed to timely file Forms 1040 for 2011 (2011 return) and for 2012 (2012 return); it was not until after petitioners filed their petitions challenging the January 23, 2014, notices of deficiency that Mr. Collins submitted returns for 2011 and 2012 to respondent's counsel.[10]  These returns were never

---

[10]Likewise, it was not until after petitioners filed their petitions challenging the January 23, 2014, notices of deficiency that Mr. Collins submitted CFE's Form 1120S for 2011 (2011 CFE return) to respondent's counsel.  The 2011 CFE return was CFE's last submitted return.

[*12] processed. Mr. Collins also did not make any Federal tax payments for 2011 and 2012.

The unprocessed 2011 return reported the following: (1) taxable interest of $50, (2) Schedule E income from CFE of $9,455, (3) Social Security benefits of $12,601 (of which zero was reported as taxable), (4) the standard deduction, and (5) one personal exemption for himself. The unprocessed 2012 return reported the following: (1) taxable interest of $75, (2) Schedule C business income from Mr. Collins' return preparation activities of $315,[11] (3) Social Security benefits of $13,056 (of which zero was reported as taxable), (4) the student loan interest deduction of $2,500, (5) the standard deduction, and (6) one personal exemption for himself.

---

[11]Mr. Collins' 2012 Schedule C reported gross receipts of $28,256 and expenses of $27,941 consisting of the following: (1) $7,242 for car and truck expenses, (2) $8,440 for contract labor, (3) $449 for depreciation expenses, (4) $4,000 for rent or lease of other business property, (5) $544 for repairs and maintenance, (6) $1,123 for supplies, (7) $326 for taxes and licenses, (8) $679 for travel, (9) $623 for meals and entertainment (after reducing the amount by the 50% limitation imposed by sec. 274(n)), (10) $975 for telephone, (11) $604 for software, (12) $113 for dues and subscriptions, (13) $253 for parking and tolls, (14) $74 for cleaners, (15) $243 for postage, (16) $13 for copies and printing, and (17) $2,240 for "Mass. Clients' An. Reports/Ex Tax Paid, In Income".

**[\*13]** V.     Audit and Determination

At a time not established by the record the IRS began an audit for petitioners' years at issue.[12]  The audit was conducted by IRS Revenue Agent David M. Ledoux (RA Ledoux).  During the audit petitioners missed several scheduled meetings with RA Ledoux and failed to respond to his information document requests.  As further discussed below, RA Ledoux determined petitioners' total income for 2009 and 2010 and Mr. Collins' total income for 2011 and 2012 by bank deposits analysis of petitioners' 22 accounts at 5 different banks.  Additionally, on the basis of the bank deposits analysis for 2011 and 2012 and using certain information return documents, RA Ledoux prepared substitutes for returns for Mr. Collins for 2011 and 2012 pursuant to section 6020(b) (2011 and 2012 SFRs).

On the basis of the bank deposits analysis for 2009 and 2010, RA Ledoux increased petitioners' income by $64,460 and $96,295, respectively.  Specifically, RA Ledoux determined that Mr. Collins' 100% distributive shares of CFE's income were $46,083 and $78,576 for 2009 and 2010, respectively (in lieu of petitioners' reported Schedule E losses pertaining to CFE of $1,828 and $3,277 for

---

[12]The audit initially began with respect to 2009 and then was expanded to 2010, 2011, and 2012.

- 14 -

[*14] those respective years), and he disallowed all their Schedule A deductions for charitable gifts and for unreimbursed employee business expenses for 2009 and 2010 and all their Schedule E deductions related to Ms. Abdolrahim's rental of space in the basement of the Grafton property to Mr. Collins for 2009 and 2010.[13]  Finally, RA Ledoux determined that section 6651(a)(1) additions to tax should be imposed against petitioners and section 6663 civil fraud penalties should be imposed against Mr. Collins for 2009 and 2010.[14]

On the basis of the bank deposits analysis for 2011 and 2012 and certain information return documents, RA Ledoux increased Mr. Collins' income by $34,486 and $54,034 for 2011 and 2012, respectively.  Specifically, for 2011 RA Ledoux determined that Mr. Collins had "other" income of $25 from AMF Bowling Centers (which was reported on a Form 1099-MISC, Miscellaneous Income), taxable interest of $50 from Commerce Bank (which was reported on a Form 1099-INT, Interest Income), taxable Social Security benefits of $10,710, and

---

[13]Consequently, since petitioners' overall amount of Schedule A deductions was less than the standard deduction for 2009 and 2010, RA Ledoux determined that their income should be increased by $17,253 for 2009 and $15,998 for 2010 (and allowed the standard deduction).

[14]RA Ledoux also determined that sec. 6662(a) accuracy-related penalties should be imposed against petitioners as an alternative to sec. 6663 civil fraud penalties.

[*15] Schedule C gross receipts (from his return preparation activities) of $35,724. He also determined for 2011 that Mr. Collins was entitled to a self-employment tax deduction of $2,523, the standard deduction, and one personal exemption. For 2012 RA Ledoux determined that Mr. Collins had taxable interest of $75 from United Bank (which was reported on a Form 1099-INT), taxable Social Security benefits of $11,098, and Schedule C gross receipts (from his return preparation activities) of $56,610. He also determined for 2012 that Mr. Collins was entitled to a self-employment tax deduction of $3,999, the standard deduction, and one personal exemption. Finally, RA Ledoux determined that section 6651(a)(2) and (f) and 6654 additions to tax should be imposed against Mr. Collins for 2011 and 2012.[15]

The notice of deficiency sent to petitioners on January 23, 2014, and the notice of deficiency sent to Mr. Collins also on January 23, 2014, reflect those determinations.[16] A Civil Penalty Approval Form prepared by RA Ledoux on August 27, 2013, listed 2009 and 2010 and bore the signature of RA Ledoux's immediate supervisor, Paul E. Adamonis, on the line provided on the form for

---

[15]RA Ledoux also determined that sec. 6651(a)(1) additions to tax should be imposed against Mr. Collins as an alternative to sec. 6651(f) additions to tax.

[16]We also note that the 2011 and 2012 SFRs, upon which the notice of deficiency to Mr. Collins is based, reflect the 2011 and 2012 determinations.

**[*16]** "Group Manager Approval to Assess Penalties Identified Above" dated

October 21, 2013, approving the section 6663 civil fraud penalties.

VI.    Tax Court Proceedings

Petitioners timely petitioned this Court for redetermination of the

deficiencies, additions to tax, and penalties.  In answering Mr. Collins' petition,

respondent affirmatively alleged facts in support of the determination that Mr.

Collins' failure to file his returns for 2011 and 2012 was due to fraud.  Mr. Collins

did not file a reply to respondent's answer.  Consequently, respondent filed a

motion for entry of an order that the undenied allegations be deemed admitted

pursuant to Rule 37(c).  Mr. Collins did not respond to respondent's motion,

despite an order of the Court directing him to do so.  The Court granted

respondent's motion; thus, respondent's affirmative allegations that Mr. Collins'

failure to file his returns for 2011 and 2012 was due to fraud were deemed

admitted.  Respondent then filed a motion for partial summary judgment on the

basis of the deemed admissions.  The Court also granted this motion.[17]

---

[17]We note that the Court ordered Mr. Collins to respond to respondent's motion for partial summary judgment by a certain date.  He did not do so but instead after the response date filed a motion for extension of time to respond to respondent's motion.  When Mr. Collins did not file a response to respondent's motion by the extended date, the Court granted respondent's motion.  Five days later, Mr. Collins filed a motion styled "motion [to] allow late entry response",

(continued...)

[*17] At trial (by way of stipulation or statement made on the record) and on brief the parties made numerous concessions for the years at issue. They are as follows. The parties now agree that total deposits into petitioners' 22 bank accounts for the years at issue are as stated in the bank deposits analyses for those years: $107,845 for 2009, $136,063 for 2010, $48,399 for 2011, and $69,741 for 2012. The parties further agree that some deposits into these accounts were either taxable gross receipts of CFE or taxable income to Mr. Collins and some were nontaxable. Specifically, for 2009 and 2010 the parties agree that deposits into accounts 4-22 were not income to Mr. Collins or CFE but that certain deposits into accounts 1 and 2 were gross receipts of CFE for those years.[18] Out of the total deposits of $15,973 into account 1 during 2009, the parties agree that $6,071 was nontaxable and the remaining $9,902 was gross receipts of CFE; out of the total deposits of $31,063 into account 2 during 2009, the parties agree that $217 was nontaxable, $19,071 was gross receipts of CFE, and the remaining $11,775 was deposits of

[17](...continued)
which appeared to seek to ask the Court to relieve him from the deemed admissions and to reconsider the Court's grant of partial summary judgment to respondent. The Court set Mr. Collins' motion for hearing and allowed respondent to respond to Mr. Collins' motion. Respondent timely filed a response, and after a hearing on Mr. Collins' motion the Court denied the motion without prejudice.

[18]Accounts 3-7 were closed during 2009 and 2010.

[*18] cash. As for the $11,775, respondent's stipulated position is that this amount was gross receipts of CFE; petitioners' stipulated position is that this amount was taken from Mr. Collins' cash hoard at home and therefore nontaxable. Out of the total deposits of $20,348 into account 1 during 2010, the parties agree that $4,104 was nontaxable, $15,769 was gross receipts of CFE, and the remaining $475 was deposits of cash; out of the total deposits of $35,266 into account 2 during 2010, the parties agree that $8,000 was nontaxable, $22,266 was gross receipts of CFE, and the remaining $5,000 was deposits of cash. As for the $475 and the $5,000, respondent's stipulated position is that these amounts were gross receipts of CFE; petitioners' stipulated position is that these amounts were taken from Mr. Collins' cash hoard at home and therefore nontaxable. Finally, for 2009 and 2010 respondent now agrees that petitioners are entitled to their claimed Schedule A deductions for charitable gifts and that business expense deductions attributable to CFE totaling $6,531 and $5,720, respectively, are allowed.[19]

---

[19]For 2009 the allowed business expense deduction consists of the following: (1) $2,043 for supplies, (2) $441 for software, (3) $95 for advertising, (4) $269 for legal and professional fees, (5) $83 for postage, and (6) $3,600 for rent. For 2010 the allowed business expense deduction consists of the following: (1) $1,199 for Massachusetts annual reports, (2) $456 for Massachusetts corporate excise tax, (3) $65 for postage, and (4) $4,000 for rent.

[*19] For 2011 and 2012, with respect to petitioners' 22 bank accounts, the parties agree that deposits into accounts 8-22 were not income to Mr. Collins or CFE but that certain deposits into accounts 2-7 were income to Mr. Collins for those years.[20] Out of the total deposits of $33,856 into account 2 during 2011, the parties agree that $8,742 was nontaxable, $927 was gross receipts of Mr. Collins' Schedule C business, $10,658 was Mr. Collins' Social Security benefits,[21] and the remaining $13,530 was deposits of cash; out of the total deposits of $2,893 into account 3 during 2011, the parties agree that $50 was gross receipts of Mr. Collins' Schedule C business, $1,943 was direct deposits of Mr. Collins' Social Security benefits, and the remaining $900 was deposits of cash; out of the total deposits of $960 into account 4 during 2011, the parties agree that $290 was gross receipts of Mr. Collins' Schedule C business and the remaining $670 was deposits of cash. As for the $13,530, $900, and $670, respondent's stipulated position is that these amounts were gross receipts of Mr. Collins' Schedule C business;

---

[20]Accounts 1 and 5-7 were closed during 2011, and account 1 was also closed during 2012.

[21]The parties agree that Mr. Collins received Social Security benefits of $12,600 during 2011, and that of this amount, $1,943 was direct deposited into account 3 and the remainder ($10,658) was not direct deposited into any account but ultimately deposited into account 2. The parties also agree that Mr. Collins received Social Security benefits of $13,056 during 2012, which, as indicated infra p. 20, was direct deposited into account 3.

[*20] petitioners' stipulated position is that these amounts were taken from Mr. Collins' cash hoard at home and therefore nontaxable. Out of the total deposits of $27,257 into account 2 during 2012, the parties agree that $7,483 was nontaxable, $14,824 was gross receipts of Mr. Collins' Schedule C business, and the remaining $4,950 was deposits of cash; out of the total deposits of $17,908 into account 3 during 2012, the parties agree that $2,752 was gross receipts of Mr. Collins' Schedule C business, $13,056 was direct deposits of Mr. Collins' Social Security benefits, and the remaining $2,100 was deposits of cash; out of the total deposits of $11,315 into account 4 during 2012, the parties agree that $1,315 was gross receipts of Mr. Collins' Schedule C business and the remaining $10,000 was deposits of cash; out of the total deposits of $12,585 into account 5 during 2012, the parties agree that $885 was gross receipts of Mr. Collins' Schedule C business and the remaining $11,700 was deposits of cash; the parties agree that the total of $75 deposited into account 6 during 2012 was gross receipts of Mr. Collins' Schedule C business and the total of $600 deposited into account 7 during 2012 was deposits of cash. As for the $4,950, $2,100, $10,000, $11,700 and $600, respondent's stipulated position is that these amounts were gross receipts of Mr. Collins' Schedule C business; petitioners' stipulated position is that these amounts were taken from Mr. Collins' cash hoard at home and therefore nontaxable.

[*21] Finally, for 2011 and 2012 respondent now agrees that Mr. Collins is entitled to Schedule C business expense deductions totaling $5,314 and $8,260, respectively,[22] and for 2012 Mr. Collins is entitled to a deduction for student loan interest paid.

OPINION

I.    Burden of Proof

As a preliminary matter we address who has the burden of proof with respect to the various issues in this case.

In cases (such as this one) where the Commissioner has determined unreported income by a bank deposits analysis, the law of the U.S. Court of Appeals for the First Circuit, the court to which an appeal of this case would lie absent stipulation by the parties otherwise, see sec. 7482(b)(1)(A), is that for the Commissioner to "legitimately avail" himself of the bank deposits analysis he must initially introduce evidence showing "(1) that, during the tax years in question, the taxpayer was engaged in an income producing business or calling;

---

[22]For 2011 the allowed business expense deduction consists of the following:  (1) $31 for software, (2) $109 for Massachusetts annual reports, (3) $955 for supplies, (4) $190 for depreciation, (5) $11 for copies, (6) $18 for postage, and (7) $4,000 for rent.  For 2012 the allowed business expense deduction consists of the following:  (1) $782 for software, (2) $337 for taxes, licenses, and fees, (3) $2,490 for supplies, (4) $306 for depreciation, (5) $13 for copies, (6) $332 for postage, and (7) $4,000 for rent.

**[\*22]** (2) that he made regular deposits of funds into bank accounts; and (3) that an adequate and full investigation of those accounts was conducted in order to distinguish between income and non-income deposits", United States v. Morse, 491 F.2d 149, 152 (1st Cir. 1974). If the Commissioner meets this preliminary evidentiary foundation, it is the taxpayer's burden to prove that the Commissioner's determination of unreported income by a bank deposits analysis is incorrect. See Parks v. Commissioner, 94 T.C. 654, 658 (1990).

Petitioners make no argument that respondent failed to meet the three requirements above; indeed the record clearly shows that Mr. Collins had an active and income-producing return preparation business during the years at issue, that he deposited funds into petitioners' 22 accounts at 5 different banks, and that RA Ledoux conducted an adequate and full investigation of those accounts in order to distinguish between income and nonincome deposits. We are satisfied that respondent has met his initial evidentiary burden.

Tax deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed. Segel v. Commissioner, 89 T.C. 816, 842 (1987). As relevant here, this burden requires the taxpayer to demonstrate that the claimed deductions are allowable pursuant to some statutory provision and to substantiate the expenses giving rise to the claimed deductions by

**[\*23]** maintaining and producing adequate records that enable the Commissioner to determine the taxpayer's correct liability. Sec. 6001; <u>Higbee v. Commissioner</u>, 116 T.C. 438, 440 (2001).

If the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining his Federal income tax liability and meets certain other requirements, the burden of proof shifts from the taxpayer to the Commissioner as to that factual issue. Sec. 7491(a)(1) and (2). Petitioners allege that the burden of proof should shift to respondent under section 7491(a) because they introduced "credible evidence, in the form of receipts, that clearly documents all expenses, with respect to the issues in this case", "substantiated all items with respect to all such expenses", and "kept all meetings with Respondent[] and fully Cooperated with production and examination of Document[s] and other request[s]." As discussed <u>infra</u>, the evidence does not establish that the burden of proof should shift from petitioners to respondent under section 7491(a) as to any issues of fact.

The Commissioner bears the burden of production with respect to the additions to tax under sections 6651(a)(1) and (2) and 6654, <u>see</u> sec. 7491(c), but the taxpayer bears the burden of proving that the Commissioner's determinations with respect to the additions to tax are incorrect, <u>see</u> <u>Wheeler v. Commissioner</u>, 127 T.C. 200, 207-208 (2006), <u>aff'd</u>, 521 F.3d 1289 (10th Cir. 2008).

[*24] With respect to the civil fraud penalties under section 6663, the Commissioner bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b).

## II. Unreported Business Income

A taxpayer's gross income includes "all income from whatever source derived," including "[c]ompensation for services" and "[g]ross income derived from business". Sec. 61(a)(1) and (2). It includes all "instances of undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). Furthermore, it is well settled that "[a] bank deposit is prima facie evidence of income and respondent need not prove a likely source of that income." Tokarski v. Commissioner, 87 T.C. 74, 77 (1986) (citing Estate of Mason v. Commissioner, 64 T.C. 651, 656-657 (1975), aff'd, 566 F.2d 2 (6th Cir. 1977)); see also Clayton v. Commissioner, 102 T.C. 632, 645 (1994); DiLeo v. Commissioner, 96 T.C. 858, 867-868 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).

During the audit for the years at issue RA Ledoux determined petitioners' income for 2009 and 2010 and Mr. Collins' income for 2011 and 2012 by bank deposits analyses. "The bank deposits method of reconstruction assumes that all of the money deposited into a taxpayer's account is taxable income unless the

[*25] taxpayer can show that the deposits are not taxable." Enayat v. Commissioner, T.C. Memo. 2009-257, slip op. at 36 (citing DiLeo v. Commissioner, 96 T.C. at 868). The parties now agree as to the taxability of all deposits into petitioners' 22 accounts at 5 different banks except for the deposits of cash. Petitioners' stipulated position is that these cash deposits are not taxable income because they are from Mr. Collins' cash hoard at home. On brief they also offer three alternative (nontaxable) sources for these cash deposits: an insurance check, Social Security benefits, and loan payments. These assertions are unsupported, because either there is no credible evidence or because there is no evidence at all.

Petitioners offered no credible evidence to support their claim that the cash deposits were not taxable income because they were from Mr. Collins' cash hoard at home. Although at trial we found Mr. Collins (and Ms. Abdolrahim) to be genuine and candid, "[a]s we have stated many times before, this Court is not bound to accept a taxpayer's self-serving, unverified, and undocumented testimony." Shea v. Commissioner, 112 T.C. 183, 189 (1999) (citing Tokarski v. Commissioner, 87 T.C. at 77). Additionally, RA Ledoux's bank deposits analyses are consistent with the approximate gross receipts from Mr. Collins' return

[*26] preparation activities based on Mr. Collins' own estimates of the returns he prepared and fees charged during each of the years at issue.

Similarly, petitioners offered no evidence at trial of an insurance check that may have been deposited as cash. Statements in a party's brief, such as petitioners' assertion of an insurance check, are not part of the evidentiary record. See Rule 143(c) ("[S]tatements in briefs * * * do not constitute evidence."); see also Ashkouri v. Commissioner, T.C. Memo. 2019-95, at *36 (stating that taxpayer husband's opportunity to testify was at trial and not through supplementing that testimony on brief).

As for Mr. Collins' Social Security benefits, RA Ledoux's bank deposits analysis for 2011 and 2012 includes allowances for all of Mr. Collins' Social Security benefits (both direct deposited and not direct deposited); in other words, the analysis (1) assumes that the Social Security benefits that were not directly deposited into petitioners' bank accounts were received as checks, cashed by Mr. Collins, and then deposited into the accounts, and (2) categorizes those amounts as Social Security benefits rather than cash deposits. Petitioners' suggestion that any of the cash deposits at issue were Mr. Collins' Social Security benefits is therefore unsupported (and belied) by the record.

[*27] At trial petitioners introduced into evidence certain documents purporting to show short-term interest-free loans Mr. Collins made in 2009, 2010, and 2012. Mr. Collins testified that those loans were made in cash and repaid to him in cash. We agree with respondent that even assuming these loans existed and were repaid as described,[23] they do not change the nature of the cash deposits at issue. It is reasonable to assume that rather than promptly depositing cash income received, Mr. Collins made short-term cash loans from the cash, these loans were later repaid, and then the repaid amounts were deposited; the fact of these loans therefore would not change the nature of the income Mr. Collins originally received in cash. The purported loan documents are insufficient to refute RA Ledoux's bank deposits analyses.

Accordingly, we sustain respondent's determination that the cash deposits were gross receipts of CFE for 2009 and 2010 and gross receipts of Mr. Collins' Schedule C business for 2011 and 2012.

---

[23]We note that there is really no evidence in the record to corroborate the purported loan documents; petitioners did not call any witnesses to testify regarding any short-term loans Mr. Collins purportedly made, and Mr. Collins himself proffered scant testimony with respect to the loan documents.

**[*28]** III.     Deductions

Section 162 allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Sec. 162(a); sec. 1.162-1(a), Income Tax Regs. An expense is "ordinary" if it is "normal, usual, or customary" in the taxpayer's trade or business or arises from a transaction "of common or frequent occurrence in the type of business involved." Deputy v. du Pont, 308 U.S. 488, 495 (1940). An expense is "necessary" if it is "appropriate and helpful" to the taxpayer's business, but it need not be absolutely essential. Commissioner v. Tellier, 383 U.S. 687, 689 (1966) (quoting Welch v. Helvering, 290 U.S. 111, 113 (1933)). An expense for which the taxpayer is entitled to (but does not claim) reimbursement from his or her employer generally is not considered "necessary" and thus is not deductible under section 162. Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir. 1986), aff'g T.C. Memo. 1984-533; Podems v. Commissioner, 24 T.C. 21, 22-23 (1955). Additionally, a taxpayer may not deduct a personal, living, or family expense unless the Code expressly provides otherwise. Sec. 262(a). The determination of whether an expense satisfies the requirements of section 162 is a question of fact. Cloud v. Commissioner, 97 T.C. 613, 618 (1991) (citing Commissioner v. Heininger, 320 U.S. 467, 473-475 (1943)).

**[\*29]** As we indicated supra pp. 22-23, the burden of substantiating expenses rests

with the taxpayer.  To this end, under the Cohan rule, if the taxpayer establishes

that an expense is deductible but is unable to substantiate the precise amount, the

Court may estimate the amount of the deductible expense, bearing heavily against

the taxpayer whose inexactitude is of his or her own making.  See Cohan v.

Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); see also Vanicek v.

Commissioner, 85 T.C. 731, 742-743 (1985).  In order for the Court to estimate

the amount of a deductible expense, there must be some basis upon which an

estimate may be made.  Norgaard v. Commissioner, 939 F.2d 874, 879 (9th Cir.

1991), aff'g in part, rev'g in part T.C. Memo. 1989-390; Vanicek v.

Commissioner, 85 T.C. at 742-743.  Otherwise an allowance would amount to

"unguided largesse."  Norgaard v. Commissioner, 939 F.2d at 879 (quoting

Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957)).

The Cohan rule, however, is superseded--that is, estimates are not

permitted--for certain expenses specified in section 274, such as traveling

expenses (including meals and lodging while away from home), entertainment

expenses, and "listed property" (including passenger automobile and phone)

expenses.  Secs. 274(d), 280F(d)(4)(A); sec. 1.274-5T(a), Temporary Income Tax

Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985) (flush language); see Boyd v.

[*30] <u>Commissioner</u>, 122 T.C. 305, 320 (2004). Instead, these types of expenses are subject to strict substantiation rules. <u>Sanford v. Commissioner</u>, 50 T.C. 823, 827 (1968), <u>aff'd per curiam</u>, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., <u>supra</u>. These strict substantiation rules generally require the taxpayer to substantiate with adequate records or by sufficient evidence corroborating the taxpayer's own statement (1) the amount of the expense; (2) the time and place the expense was incurred; (3) the business purpose of the expense; and (4) in the case of an entertainment expense, the business relationship between the person entertained and the taxpayer. <u>Balyan v. Commissioner</u>, T.C. Memo. 2017-140, at *7; sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). For "listed property" expenses, including passenger automobile and phone expenses, in addition to the time such expenses were incurred and their business purpose, the taxpayer must establish the amount of the business use and the total use of such property. <u>Balyan v. Commissioner</u>, at *7-*8; sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). Generally, deductions for meals and entertainment expenses are subject to the 50% limitation imposed by section 274(n).

Substantiation by adequate records requires the taxpayer to maintain (1) an account book, diary, log, statement of expense, trip sheet, or similar record

**[*31]** prepared contemporaneously with the expenditure and (2) documentary evidence, such as receipts or paid bills, which together provide each element of an expenditure. Balyan v. Commissioner, at *8; sec. 1.274-5(c)(2)(iii), Income Tax Regs.; sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

A. Schedule A Deductions for Unreimbursed Employee Business Expenses for 2009 and 2010

Petitioners claimed Schedule A deductions (before application of the 2% floor of section 67(a)) for Ms. Abdolrahim's unreimbursed employee business expenses for 2009 and 2010 in the following categories as reported on their 2009 and 2010 Forms 2106: (1) vehicle expenses using the standard mileage rate, (2) parking fees, tolls, and transportation, (3) meals and entertainment, and (4) business expenses other than vehicle expenses, parking fees, tolls, and transportation, travel expenses while away from home overnight, and meals and entertainment expenses. Respondent disallowed these deductions in full.

All but the other business expenses cannot be estimated as they are subject to the strict substantiation rules of section 274(d). In support of the expenses necessitating strict substantiation, petitioners produced at trial the following: (1) mileage logs for 2009 and 2010 prepared by Mr. Collins reporting the dates

[*32] Ms. Abdolrahim traveled from her "work address" on South Street in Shrewsbury, Massachusetts, to the Schrafft Center (at the University of Massachusetts) on Main Street in Charleston, Massachusetts, the miles she drove, and the tolls she paid and (2) receipts for tolls on the Massachusetts turnpike, parking, and meals at Chili's, Papa Gino's, and McDonald's (to name a few).[24] The logs did not include a business purpose for Ms. Abdolrahim's travel, nor did petitioners testify as to the purpose. As for the receipts for tolls on the Massachusetts turnpike, parking, and meals, standing alone they are insufficient to show that Ms. Abdolrahim incurred such expenses in connection with her employment with the University of Massachusetts. Neither she nor Mr. Collins testified as to how these incurred expenses had a business purpose or were connected with Ms. Abdolrahim's employment. Accordingly, we conclude that petitioners have not established for 2009 and 2010 that they are entitled to deductions for any amount of vehicle expenses, parking fees, tolls, and transportation, and meals and entertainment expenses under section 274(d).

With respect to the other business expenses, we similarly conclude on the basis of the record that petitioners are not entitled to deductions for any amount of these expenses for 2009 and 2010. Petitioners produced at trial credit card

---

[24]Some of the toll and restaurant receipts are virtually illegible.

[*33] statements, expense summaries, and receipts from various stores such as Staples, Lowe's, Home Depot, and Walmart. A review of this documentary evidence shows that there is no distinction between petitioners' personal living expenses and the expenses Ms. Abdolrahim incurred in connection with her employment with the University of Massachusetts.[25] In fact, at trial petitioners were unable to specifically identify which of the numerous expenses reflected in the credit card statements, expense summaries, and receipts should be deductible under section 162. See Hale v. Commissioner, T.C. Memo. 2010-229, slip op. at 6 (stating that we need not sort through a taxpayer's evidence "in an attempt to see what is, and what is not, adequate substantiation of the items" on the taxpayer's returns). And thus, on the basis of the record before us, the Court is unable to make an estimate of these other business expenses for 2009 and 2010 under the Cohan rule.

Moreover, petitioners did not produce a copy of Ms. Abdolrahim's employer's reimbursement policy or otherwise establish that any of the reported

---

[25]We note that virtually all of the other business expenses are related to Ms. Abdolrahim's use of the Grafton property as a home office. On the basis of the record before us, we find that petitioners have not met the requirements set forth in sec. 280A(c)(1) to claim a home office deduction with respect to any of these expenses. See Hamacher v. Commissioner, 94 T.C. 348, 353-354 (1990).

[*34] expenses were not reimbursed by the University of Massachusetts. See

Fountain v. Commissioner, 59 T.C. 696, 708 (1973).

We sustain respondent's disallowance of petitioners' Schedule A deductions

for unreimbursed employee business expenses for 2009 and 2010.

B.      Schedule E Deductions

1.      Rental Real Estate Expense Deductions for 2009 and 2010

Petitioners claimed deductions for expenses attributable to Ms.

Abdolrahim's rental of space in the basement of the Grafton property to Mr.

Collins for his return preparation business for 2009 and 2010 in the following

categories as reported on their 2009 and 2010 Schedules E:  (1) automobile and

travel, (2) cleaning and maintenance, (3) insurance, (4) repairs, (5) supplies,

(6) taxes, (7) utilities, (8) depreciation expenses, (9) yard maintenance, and

(10) "snow".[26]  Respondent disallowed these deductions in full.

As indicated supra p. 28, section 262(a) generally prohibits deductions for

personal, living, or family expenses.  Furthermore, a taxpayer ordinarily may not

deduct expenses (other than expenses, such as interest and taxes, that are

allowable without regard to their connection with a trade or business or an

---

[26]Petitioners reported the expenses for yard maintenance and "snow" only
on their 2010 Schedule E.

[*35] income-producing activity) with respect to a dwelling unit that he or she uses as a personal residence. See sec. 280A(a) and (b). The taxpayer uses a dwelling unit as a residence if he or she uses the dwelling unit for personal purposes for a number of days which exceeds the greater of 14 days or 10% of the number of days during the year for which the unit is rented at a fair rental value. Sec. 280A(d)(1); see also Rose v. Commissioner, T.C. Memo. 2019-73, at *23; Savello v. Commissioner, T.C. Memo. 2015-24, at *14; Langley v. Commissioner, T.C. Memo. 2013-22, at *5.

A taxpayer is deemed to have used a dwelling unit for personal purposes when, for any part of a day, the taxpayer or the taxpayer's qualifying relatives uses the unit for personal purposes or any individual uses the unit unless, under the facts and circumstances, a fair rent is charged for the use. Sec. 280A(d)(2)(A), (C); see also Rose v. Commissioner, at *24; Savello v. Commissioner, at *14-*15; Langley v. Commissioner, at *5-*6. A taxpayer's spouse is a qualifying relative. Sec. 267(c)(4).

During the years at issue Mr. Collins and Ms. Abdolrahim were spouses, and Mr. Collins used space in the basement of the Grafton property that Ms. Abdolrahim rented to him (or indirectly rented to him through CFE) not only for

[*36] his return preparation business but also for personal endeavors.[27]  Thus, his personal use of the basement is attributable to Ms. Abdolrahim.  Additionally, there is no evidence in the record of the fair rental value of the space Mr. Collins rented in the basement.  The general rule of section 280A(a) therefore applies unless petitioners can show they meet an enumerated exception to the general rule.

Section 280A(c) sets forth the exceptions to the general rule.  As relevant here, section 280A(c)(3) provides that "[s]ubsection (a) [i.e., the general rule] shall not apply to any item which is attributable to the rental of the dwelling unit or portion thereof (determined after the application of subsection (e))."  Under section 280A(e), a taxpayer who uses the dwelling unit for personal purposes during the taxable year, as a residence or otherwise, is required to limit his or her deduction to the amount determined after applying the percentage obtained by comparing the number of days the unit is rented at fair rental value to the total number of days the unit is used.  Additionally, a further limitation to the deduction in the case of rental use of a residence is set forth in section 280A(c)(5).  The deduction is limited to the excess of the gross rental income over the portion of the expenses otherwise allowable (such as mortgage interest and taxes) that are

---

[27]We note that Ms. Abdolrahim also used part of the basement to store personal items during the years at issue.

[*37] attributable to the rental use. "In other words, any net rental loss cannot be offset against unrelated income." Savello v. Commissioner, at *15-*16 (citing Feldman v. Commissioner, 84 T.C. 1 (1985), aff'd, 791 F.2d 781 (9th Cir. 1986)).

As discussed supra p. 36, the record is silent as to the fair rental value for the space in the basement of the Grafton property. Thus, petitioners have failed to meet their burden of establishing that they meet the relevant exception to the section 280A(a) general rule.

We sustain respondent's disallowance of petitioners' Schedule E deductions for rental real estate for 2009 and 2010.

### 2. Business Expense Deductions Attributable to CFE for 2009 and 2010

As discussed supra p. 18, respondent now agrees that petitioners are entitled to business expense deductions attributable to CFE totaling $6,531 and $5,720 for 2009 and 2010, respectively. Petitioners contend that additional expense deductions in the following categories should be allowed: (1) automobile and truck, (2) parking and tolls, (3) contract labor, (4) phone and internet, (5) supplies,

[*38] (6) membership dues, (7) fees paid for clients, and (8) dry cleaning.[28]  We disagree.

As is the case with the bulk of Ms. Abdolrahim's unreimbursed employee business expenses, the expenses for automobile and truck and parking and tolls, i.e., the travel-related expenses, and the phone expenses for 2009 cannot be estimated as they are subject to the strict substantiation rules of section 274(d).  In support of these expenses, petitioners produced at trial mileage logs for 2009 and 2010 prepared by Mr. Collins, receipts for tolls on the Massachusetts turnpike for 2009 only,[29] and a single credit card statement with the closing date of July 9, 2009, showing in pertinent part a payment to "VERIZON*RECURRINGPAY" and next to this payment entry the handwritten words (by Mr. Collins) "PHONE SAME EACH MONTH".  The logs reported only the total miles Mr. Collins drove in certain vehicles he owned.  They did not include a business purpose for the miles driven; to wit, actual travel dates and destinations.  Similarly, the toll receipts, like the toll receipts in support of Ms. Abdolrahim's unreimbursed

---

[28]For 2009 the additional expense deductions are for automobile and truck, parking and tolls, contract labor, phone, and fees paid for clients.  For 2010 the additional expense deductions are for automobile and truck, parking and tolls, contract labor, phone and internet, supplies, membership dues, and dry cleaning.

[29]Some of the toll receipts are virtually illegible.

[*39] employee business expenses, and the single credit card statement standing alone are insufficient to establish that these expenses are attributable to CFE. Neither Mr. Collins nor Ms. Abdolrahim testified as to how the expenses for automobile and truck, parking and tolls, and phone had a business purpose or were connected with CFE. Accordingly, we conclude that petitioners have not substantiated these expenses under section 274(d).

With respect to the other expenses, petitioners similarly have not adequately substantiated them. At trial petitioners produced three receipts in support of the expenses for contract labor--one (typed) receipt showing payment to an individual for "Data Entry and Clerical Services" of $4,800 for the period "January through December, 2009" and the other two (handwritten) receipts dated March 31, 2009, and September 22, 2010, showing payment to another individual for "Advertising" and "Delivery Services" of $1,683 and $2,244, respectively. However, they did not corroborate these receipts with testimony from the purported recipients, nor did they introduce underlying documentation (e.g., contracts, invoices, or Forms 1099-MISC) or any proof of payment (e.g., canceled checks). See Karch v. Commissioner, T.C. Memo. 2013-237, at *14.

Petitioners also produced at trial credit card statements, expense summaries, canceled checks, and a dry cleaner's receipt. A review of this documentary

**[\*40]** evidence shows that, as with the other business expenses petitioners reported as unreimbursed employee business expenses for Ms. Abdolrahim, there is no distinction between petitioners' personal living expenses and the expenses Mr. Collins incurred in connection with CFE. Again, at trial petitioners were unable to specifically identify which of the numerous expenses reflected in the credit card statements and other documentary evidence should be deductible under section 162. See supra p. 33 for our discussion of Hale. And thus, on the basis of the record before us, the Court is unable to make an estimate of these remaining expenses for 2009 and 2010 under the Cohan rule.

Petitioners are not entitled to business expense deductions attributable to CFE for 2009 and 2010 in excess of what respondent has already allowed.

C.      Schedule C Business Expense Deductions for 2011 and 2012

As discussed supra p. 21, respondent now agrees that Mr. Collins is entitled to Schedule C business expense deductions totaling $5,314 and $8,260 for 2011 and 2012, respectively. Mr. Collins contends that additional expense deductions in the following categories should be allowed: (1) automobile rental, (2) travel

[*41] (including travel by air), (3) parking and tolls, (4) contract labor, (5) supplies, (6) membership dues, (7) phone, and (9) dry cleaning.[30] We disagree.

As is the case with the bulk of Ms. Abdolrahim's unreimbursed employee business expenses, the expenses for automobile rental, travel (including travel by air), and parking and tolls, i.e., the travel-related expenses, cannot be estimated as they are subject to the strict substantiation rules of section 274(d). In support of these expenses, petitioners produced at trial (1) mileage logs for 2011 and 2012 prepared by Mr. Collins, (2) receipts for tolls on the Massachusetts turnpike for 2012 only, and (3) credit card statements showing payments for automobile rental and air travel during 2012. The logs reported only the total miles Mr. Collins drove in certain vehicles he owned. They did not include a business purpose for the miles driven; to wit, actual travel dates and destinations. Similarly, the toll receipts and the credit card statements standing alone are insufficient to establish that the expenses for parking and tolls, automobile rental, and air travel are attributable to Mr. Collins' return preparation business. Neither Mr. Collins nor

---

[30]For 2011 the additional expense deductions are for automobile rental, travel (including travel by air), contract labor, membership dues, phone, supplies, and dry cleaning. For 2012 the additional expense deductions are for automobile rental, travel (including travel by air), parking and tolls, contract labor, membership dues, and phone.

**[*42]** Ms. Abdolrahim testified as to how these expenses had a business purpose or were connected with Mr. Collins' return preparation business.

With respect to the other expenses, petitioners similarly have not adequately substantiated them. At trial petitioners produced three receipts in support of the expenses for contract labor--two (typed) receipts showing payment to an individual for "Administrative Support" and "Data Entry" of $15,000 and $5,855 for "January through December" of 2011 and 2012, respectively, and a (handwritten) receipt dated December 20, 2012, showing payment to another individual for "Advertising" and "Delivery Services" of $2,585. However, they did not corroborate these receipts with testimony from the purported recipients, nor did they introduce underlying documentation (e.g., contracts, invoices, or Forms 1099-MISC) or any proof of payment (e.g., canceled checks). See Karch v. Commissioner, at *14.

Petitioners also produced at trial credit card statements, expense summaries, canceled checks, two account statements from Verizon, and dry cleaner's receipts. A review of this documentary evidence shows that, as with the other business expenses petitioners reported as unreimbursed employee business expenses for Ms. Abdolrahim, there is no distinction between Mr. Collins' personal living expenses and the expenses he incurred in connection with his return preparation

[*43] business. Again, at trial petitioners were unable to specifically identify which of the numerous expenses reflected in the credit card statements and other documentary evidence should be deductible under section 162. See supra p. 33 for our discussion of Hale. And thus, on the basis of the record before us, the Court is unable to make an estimate of these remaining expenses for 2011 and 2012 under the Cohan rule.

Mr. Collins is not entitled to Schedule C business expense deductions for 2011 and 2012 in excess of those respondent has already allowed.

IV. Additions to Tax

A. Section 6651(a)(1) Additions to Tax for 2009 and 2010

Section 6651(a)(1) imposes an addition to tax for a taxpayer's failure to file a required Federal income tax return on or before the specified filing date, including extensions. As noted supra p. 23, the Commissioner bears the burden of production with respect to any addition to tax. Sec. 7491(c). The Commissioner satisfies his burden of production by providing sufficient evidence to show that the taxpayer filed his Federal income tax return late. Wheeler v. Commissioner, 127 T.C. at 207-208; Higbee v. Commissioner, 116 T.C. at 447.

The record includes the 2009 joint return and the 2010 joint return, which were required to be filed by April 15, 2010, and April 18, 2011, respectively, see

[*44] sec. 1.6072-1, Income Tax Regs., but were filed past these specified filing dates on February 9, 2011, and April 12, 2012, respectively. Respondent has therefore met his burden of production with respect to the additions to tax under section 6651(a)(1) for 2009 and 2010.

Application of the section 6651(a)(1) addition to tax may be avoided if the taxpayer shows that the failure to timely file was due to reasonable cause and not due to willful neglect. "If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause." Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. The taxpayer can show that he did not act with "willful neglect" if he can "prove that the late filing did not result from a 'conscious, intentional failure or reckless indifference.'" Niedringhaus v. Commissioner, 99 T.C. 202, 221 (1992) (quoting United States v. Boyle, 469 U.S. 241, 245-246 (1985)). The burden of showing reasonable cause under section 6651(a)(1) remains with petitioners. See Higbee v. Commissioner, 116 T.C. at 447-448.

Petitioners offered no evidence at trial that their failure to timely file was due to reasonable cause and not due to willful neglect. On brief they claim that several "factors" contributed to their failure to timely file; to wit, several deaths in the family, Mr. Collins' health problems, and the deterioration of their marriage.

[*45] Statements in a party's briefs are not part of the evidentiary record. See

supra p. 26 for our discussion of Rule 143(c) and Ashkouri. In any event, while

we are sympathetic to their situation, a taxpayer's selective inability to perform his

tax obligations while performing his regular business and personal activities does

not excuse his failure to file. See Godwin v. Commissioner, T.C. Memo.

2003-289, slip op. at 22-23. Mr. Collins, as a tax return preparer with over 25

years of experience, is well aware of the filing deadlines and seemingly was not

hindered from filing numerous returns that he prepared for his clients for 2009 and

2010. The same can be said for Ms. Abdolrahim--she performed her duties as an

information technology engineer at all relevant times for the University of

Massachusetts. Accordingly, we find that petitioners did not have reasonable

cause for failing to timely file the 2009 joint return and the 2010 joint return, and

we sustain the additions to tax under section 6651(a)(1) against petitioners for

2009 and 2010.[31]

---

[31]We note that the Court granted respondent's motion for partial summary judgment, holding Mr. Collins' failure to file his returns for 2011 and 2012 was due to fraud. Accordingly, without further analysis, we sustain the additions to tax under sec. 6651(f) against Mr. Collins for 2011 and 2012. On the basis of our holding in this regard, we need not address respondent's alternative position that Mr. Collins is liable for additions to tax for failure to timely file his returns for 2011 and 2012 pursuant to sec. 6651(a)(1).

**[*46]** B.    Section 6651(a)(2) Additions to Tax for 2011 and 2012

Section 6651(a)(2) imposes an addition to tax for a taxpayer's failure to timely pay the amount shown as tax on a Federal income tax return unless the taxpayer shows that such failure was due to reasonable cause and not due to willful neglect. In this regard, the Commissioner's burden of production under section 7491(c) requires him to come forward with sufficient evidence that the tax was shown on a Federal income tax return and was not paid. See Wheeler v. Commissioner, 127 T.C. at 206, 207-208; Cabirac v. Commissioner, 120 T.C. 163, 170 (2003), aff'd without published opinion, 94 A.F.T.R.2d (RIA) 2004-5490 (3d Cir. 2004). In a case such as this where the taxpayer has not filed Federal income tax returns for certain taxable years, substitutes for returns prepared by the Commissioner that meet the requirements of section 6020(b) for those years are treated as the "return[s]" filed by the taxpayer for purposes of section 6651(a)(2). See sec. 6651(g); Wheeler v. Commissioner, 127 T.C. at 208-209.

The record includes the 2011 and 2012 SFRs, and we find (and there is no dispute) that they constitute valid section 6020(b) returns. The record also establishes that Mr. Collins made no Federal tax payments for 2011 and 2012. Respondent thereby satisfies his burden of production. Mr. Collins gave the same reasons for his failure to timely pay as for petitioners' failure to timely file the

[*47] 2009 joint return and the 2010 joint return; to wit, several deaths in the family, his own health problems, and the deterioration of their marriage. Accordingly, we sustain the additions to tax under section 6651(a)(2) against Mr. Collins for 2011 and 2012.

C.     Section 6654 Additions to Tax for 2011 and 2012

Section 6654(a) imposes an addition to tax "in the case of any underpayment of estimated tax by an individual". The addition to tax is calculated with reference to four required installment payments of the individual's estimated tax liability. Sec. 6654(c) and (d). Each required installment payment is equal to 25% of the "required annual payment", which in turn is equal to the lesser of (1) 90% of the tax shown on the individual's return for that year (or, if no return is filed, 90% of the individual's tax for such year) or (2) if the individual filed a return for the preceding taxable year, 100% of the tax shown on the individual's return for the preceding taxable year. Sec. 6654(d)(1)(A) and (B). In this regard the Commissioner's burden of production under section 7491(c) requires him to produce evidence that the taxpayer had a "required annual payment", and in order to do so, he must establish the tax shown on the taxpayer's return for the previous year or that the taxpayer filed no such return. Wheeler v. Commissioner, 127 T.C. at 212; Schlussel v. Commissioner, T.C. Memo. 2013-185. Section 6654 does not

**[\*48]** include a general exception for reasonable cause or lack of willful neglect. See Rader v. Commissioner, 143 T.C. 376, 390 (2014), aff'd in part, appeal dismissed in part, 616 F. App'x 391 (10th Cir. 2015).

Respondent met his burden of production because the record establishes that Mr. Collins did not file Federal income tax returns for 2011 and 2012 and total tax of $1,433 was shown on the 2010 joint return. See Wheeler v. Commissioner, 127 T.C. at 212. Mr. Collins has not argued that any of the statutory exceptions under section 6654(e) applies; indeed, he makes no principled defense. Accordingly, we sustain the additions to tax under section 6654 against Mr. Collins for 2011 and 2012.

V.    Civil Fraud Penalties

Section 6663(a) provides that "[i]f any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud."[32] The section 6663(a) fraud penalty is a civil sanction provided primarily as a safeguard for the protection of the revenue and to

---

[32]Additionally, in the case of a joint return the sec. 6663 penalty "shall not apply with respect to a spouse unless some part of the underpayment is due to the fraud of such spouse." Sec. 6663(c); see also Stone v. Commissioner, 56 T.C. 213, 227 (1971). As indicated supra note 2, the civil fraud penalties for 2009 and 2010 are determined only against Mr. Collins.

**[\*49]** reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. See Helvering v. Mitchell, 303 U.S. 391, 401 (1938); Sadler v. Commissioner, 113 T.C. 99, 102 (1999).

The Commissioner has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). To do so, the Commissioner must prove for each relevant year that (1) an underpayment of tax exists and (2) the underpayment was due to fraud. See Sadler v. Commissioner, 113 T.C. at 102; Katz v. Commissioner, 90 T.C. 1130, 1143 (1988). The latter burden is met if it is shown that the taxpayer intended to conceal, mislead, or otherwise evade the collection of taxes known or believed to be owing. Katz v. Commissioner, 90 T.C. at 1143 (and cases cited thereat). If the Commissioner establishes that any portion of the underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud and subjected to a 75% penalty unless the taxpayer establishes by a preponderance of the evidence that some part of the underpayment is not attributable to fraud. Sec. 6663(b).

In Frost v. Commissioner, 154 T.C. __, __ (slip op. at 20) (Jan. 7, 2020), we recently held that the Commissioner bears the initial burden of production under section 7491(c) to offer evidence that he has complied with the procedural requirements of section 6751(b) and that once he has satisfied this initial burden

**[\*50]** the taxpayer must come forward with contrary evidence.  We address the burden of production issue first.

A.     Section 6751(b) Compliance

Section 6751(b)(1) requires the initial determination of certain penalties to be "personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate."  See Graev v. Commissioner, 149 T.C. 485, 492-493 (2017), supplementing and overruling in part 147 T.C. 460 (2016); see also Clay v. Commissioner, 152 T.C. 223, 248 (2019) (quoting section 6751(b)(1)).  In Belair Woods, LLC v. Commissioner, 154 T.C. __, __ (slip op. at 24-25) (Jan. 6, 2020), we recently held that "the 'initial determination' of a penalty assessment * * * is embodied in the document by which the Examination Division formally notifies the taxpayer, in writing, that it has completed its work and made an unequivocal decision to assert penalties."

The Civil Penalty Approval Form here for the civil fraud penalties for 2009 and 2010 was prepared by RA Ledoux on August 27, 2013, and bore the signature of Mr. Adamonis, RA Ledoux's immediate supervisor, dated (October 21, 2013) before the issuance of the January 23, 2014, notice of deficiency to petitioners (the first formal communication of penalties to them).  Consequently, we hold that

**[\*51]** respondent has introduced evidence that written supervisory approval of the penalties was given before a formal communication of the penalties to petitioners and that the evidence is sufficient to carry his initial burden of production under section 7491(c) to show that he complied with the procedural requirements of section 6751(b).

The burden now shifts to petitioners to offer evidence suggesting that written supervisory approval of the penalties was untimely--e.g., that there was a formal communication of the penalties before the proffered approval. See Frost v. Commissioner, 154 T.C. at __ (slip op. 22). Petitioners have not claimed, nor does the record support a conclusion, that respondent formally communicated his initial penalty determination to petitioners before October 21, 2013, the date that Mr. Adamonis signed the Civil Penalty Approval Form. We therefore hold that the penalties here were approved in writing before the first formal communication to petitioners of those penalties. See id. at __ (slip op. at 23) (citing Clay v. Commissioner, 152 T.C. at 249).

B. Section 6663 Analysis

We now address whether Mr. Collins is liable for section 6663(a) fraud penalties for 2009 and 2010.

[*52] Mr. Collins admits that he understated his income for 2009 and 2010 to the extent of the deposits he now concedes are taxable.  Additionally, as discussed supra pp. 24-27, he further understated his income to the extent of the cash deposits.  Accordingly, respondent has proven by clear and convincing evidence that Mr. Collins underpaid his tax liabilities for 2009 and 2010.

Next, we must determine whether respondent has proven by clear and convincing evidence that any portions of the underpayments are attributable to fraud.  As indicated supra p. 49, fraud for this purpose is defined as intentional wrongdoing by the taxpayer motivated by a specific purpose of avoiding tax believed to be owing.  Maciel v. Commissioner, 489 F.3d 1018, 1026 (9th Cir. 2007), aff'g in part, rev'g in part T.C. Memo. 2004-28; Neely v. Commissioner, 116 T.C. 79, 86 (2001).  Fraud "does not include negligence, carelessness, misunderstanding or unintentional understatement of income", but does include any conduct designed to conceal, mislead, or otherwise prevent the collection of taxes.  United States v. Pechenik, 236 F.2d 844, 846 (3d Cir. 1956); see Holland v. United States, 348 U.S. 121, 139 (1954); United States v. Murdock, 290 U.S. 389, 396 (1933); DiLeo v. Commissioner, 96 T.C. at 874.

The existence of fraud is a question of fact to be resolved upon consideration of the entire record.  See DiLeo v. Commissioner, 96 T.C. at 874.

**[*53]** Fraud will never be presumed and must be established by independent evidence of fraudulent intent.  Recklitis v. Commissioner, 91 T.C. 874, 909-910 (1988).  However, because direct proof of a taxpayer's fraudulent intent is rarely available, fraud may be established by circumstantial evidence and inferences drawn from the facts.  Niedringhaus v. Commissioner, 99 T.C. at 210.  The taxpayer's entire course of conduct during each relevant year and leading up to the preparation of the year's return may establish the requisite intent.  DiLeo v. Commissioner, 96 T.C. at 874; Stone v. Commissioner, 56 T.C. 213, 224 (1971).

Fraudulent intent may be inferred from various kinds of circumstantial evidence or "badges of fraud".  Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), aff'g T.C. Memo. 1984-601.  To this end, courts have routinely considered whether the following badges of fraud are present:  (1) a pattern of understating income, (2) failing to maintain adequate records, (3) offering implausible or inconsistent explanations of behavior, (4) concealing income or assets, (5) dealing in cash, (6) providing incomplete or misleading information to his or her tax return preparer, (7) filing false documents, including filing false Federal income tax returns, (8) failing to file Federal income tax returns, (9) failing to cooperate with tax authorities, and (10) engaging in and attempting to conceal illegal activity.  See id.; Niedringhaus v. Commissioner, 99 T.C. at 211.

[*54] The existence of any one factor is not dispositive, but the existence of several factors is persuasive circumstantial evidence of fraud. See Niedringhaus v. Commissioner, 99 T.C. at 211; Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989).

In the light of the foregoing, we will evaluate Mr. Collins' conduct beginning in 2009 and continuing up to April 2012, when the 2010 joint return was filed.

Numerous badges of fraud are present here. Mr. Collins now admits that he substantially understated his income for the years at issue (except with respect to the cash deposits) and, as discussed supra pp. 24-27, we have sustained respondent's determination that the cash deposits were gross receipts of CFE for 2009 and 2010 and gross receipts of Mr. Collins' Schedule C business for 2011 and 2012.

He failed to maintain adequate records and as a result RA Ledoux had to resort to bank deposits analyses to determine his and Ms. Abdolrahim's income for the years at issue using their bank account records. Additionally, as discussed supra pp. 37-43, on the basis of inadequate substantiation we found that petitioners are not entitled to business expense deductions attributable to CFE for 2009 and 2010 and Mr. Collins is not entitled to Schedule C business expense

[*55] deductions for 2011 and 2012 except to the extent respondent has already allowed.

Petitioners filed the 2009 joint return and the 2010 joint return late; the 2009 CFE return and the 2010 CFE return were also filed late. Mr. Collins' returns for 2011 and 2012 (and the 2011 CFE return) were not submitted (to respondent's counsel) until after the 2011 and 2012 SFRs were prepared by RA Ledoux and after petitioners filed their petitions. Also, as indicated supra note 31, we have already found that Mr. Collins' failure to timely file his returns for 2011 and 2012 was due to fraud under section 6651(f).

Mr. Collins was uncooperative during the audit for the years at issue; the record shows, and we have found, that he missed several scheduled meetings with RA Ledoux and failed to respond to his information document requests.

Mr. Collins is a tax professional, having operated his return preparation business, through CFE or as sole proprietor, since approximately 1991. He estimated that he prepared "at least" 230 returns in 2009, 220 to 240 returns in 2010, 298 returns in 2011, and 118 to 130 returns in 2012. The IRS' records indicated that Mr. Collins prepared 248 returns during 2010 (175 returns under his PTIN and 73 returns under CFE's EIN), 254 returns during 2011 (5 returns under his PTIN and 249 returns under CFE's EIN), and 538 returns during 2012 (267

[*56] returns under his PTIN and 271 returns under CFE's EIN).  Mr. Collins'

"business experience and knowledge of the tax laws is circumstantial evidence

that he was aware of his tax-reporting obligations and that in consistently

underreporting his income, he did so with fraudulent intent."  Chico v.

Commissioner, T.C. Memo. 2019-123, at *47 (and cases cited thereat).

Respondent has proven by clear and convincing evidence that for 2009 and

2010 Mr. Collins had an underpayment of tax due to fraudulent intent.  Mr.

Collins has not proven that any specific portion of any underpayment of tax was

not attributable to fraud.[33]  See sec. 6663(b).  Accordingly, we sustain

respondent's determination that Mr. Collins is liable for the section 6663(a) civil

fraud penalties for 2009 and 2010.

We have considered all of the arguments made by the parties and, to the

extent they are not addressed herein, we find them to be moot, irrelevant, or

without merit.

_____

[33]Mr. Collins' sole contention is that petitioners' failure to timely file the 2009 joint return and the 2010 joint return and his failure to file returns for 2011 and 2012 were not intentional as those failures were due to several deaths in the family, his own health problems, and the deterioration of their marriage.  As indicated supra pp. 44-45, these are insufficient reasons to excuse petitioners' failures.

**[\*57]** To reflect the foregoing,

<u>Decisions will be entered under</u>

<u>Rule 155</u>.